Docket No. 102036.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

VIRGINIA SURETY COMPANY, INC., Appellant, v. NORTHERN INSURANCE COMPANY OF NEW YORK *et al.*, Appellees.

*Opinion filed January 19, 2007.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The plaintiff, Virginia Surety Company, Inc. (Virginia Surety), challenges the appellate court's decision to affirm the Will County circuit court's summary judgment order in favor of defendant, Northern Insurance Company of New York (Northern). The issue is Northern's liability to its insured, De Graf Concrete Construction, Inc. (De Graf), under a commercial general liability (CGL) policy for a single-count third-party contribution action brought against De Graf. For the following reasons, we affirm the judgment of the appellate court.

### BACKGROUND

Two contracts are central to this case: a construction subcontract between general contractor Capital Construction Group, Inc.

(Capital), and its subcontractor De Graf, and a CGL policy purchased by De Graf from Northern. Under the construction subcontract between Capital and De Graf, De Graf was to perform cement masonry work at a job site in Addison, Illinois. The contract also required De Graf employees to work on the job site. The construction subcontract included the following provision:

> "To the fullest extent permitted by law, the Subcontractor WAIVES ANY RIGHT OF CONTRIBUTION AGAINST AND shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses, and expenses, including but not limited to attorneys fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death or to injury to or destruction of tangible property (other than the Work itself) including loss of use therefrom, WHICH IS caused in whole or in party by negligent acts or omissions of the Subcontractor, the Subcontractor's subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, loss, or expense is caused in part by a party indemnified hereunder."

De Graf obtained a CGL policy from defendant Northern. The Northern CGL policy generally excludes coverage for bodily injuries to De Graf's employees. However, under an exception to this exclusion, Northern would pay sums for "liability assumed by the insured under an 'insured contract.'" The policy defines this "insured contract" as

> "That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

On June 4, 1997, a De Graf employee, James Smith, was injured while working at the job site. Smith filed a workers' compensation claim against De Graf. In addition, Smith filed a complaint in the circuit court against Capital, alleging that Capital's negligence contributed to his injury. Capital thereafter filed a third-party complaint for contribution against De Graf. Capital's sole request for relief was for contribution. De Graf tendered the third-party complaint to Virginia Surety, from whom De Graf had purchased a "Worker's Compensation and Employer's Liability" policy. De Graf also tendered the third-party complaint to Northern under its CGL policy. Virginia Surety accepted the tender and defended De Graf against the third-party complaint, the outcome of which is not present in the record. Northern refused to defend or indemnify De Graf.

Virginia Surety then filed a complaint for declaratory judgment (735 ILCS 5/2–701 (West 2000)) against Northern[1] in the circuit court of Will County. Virginia Surety outlined the provisions from the subcontract and the Northern policy described above. The complaint alleged that the subcontract between De Graf and Capital is an "insured contract" within the meaning of the Northern policy of insurance. In its prayer for relief, Virginia Surety sought a declaration that Northern was obligated to defend and indemnify De Graf under the CGL policy. Virginia Surety also sought an award of damages for amounts previously paid to defend and indemnify De Graf. Northern filed an answer and a counterclaim for declaratory judgment against Virginia Surety. It sought a declaration that it did not owe a duty to defend or indemnify De Graf as to the third-party action under its CGL policy. Eventually, the parties filed cross-motions for summary judgment. The circuit court held that the subcontract between De Graf and Capital was not an "insured contract" under the policy, and that Northern did not have an obligation to defend or indemnify De Graf. The circuit court therefore granted Northern's motion for summary judgment and denied Virginia Surety's motion for summary judgment.

The appellate court affirmed. 362 Ill. App. 3d 571. The appellate court first noted the parties' arguments reflected the split in the

---

[1]Virginia Surety added Capital Construction as a necessary party defendant, but no relief was sought against Capital.

appellate districts regarding whether a subcontract as listed above can be considered an "insured contract." 362 Ill. App. 3d at 574. The appellate court distinguished those cases, however, because Capital's complaint only sought contribution under "Illinois Contribution Among Joint Tortfeasors Act" and requested contribution against De Graf in the event that judgment was entered in favor of James Smith against Capital in the original action. 362 Ill. App. 3d at 573. The appellate court stated, "unlike the third-party plaintiffs in *Hankins*, *Royal* and *Mulligan*, Capital did not file a claim for indemnification against De Graf." 362 Ill. App. 3d at 574. The court noted the difference between claims for contribution and claims for indemnity:

> " 'There is an important distinction between contribution, which distributes the loss among the tortfeasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead.' " 362 Ill. App. 3d at 574, quoting W. Prosser, Torts, §51, at 310 (4th ed. 1971).

The court noted, "An 'insured contract' exception to an employer's liability exclusion only applies when one contracting party agrees to indemnify the other contracting party from and against the other party's own negligence." 362 Ill. App. 3d at 574. For the exception to apply, De Graf must have " 'assume[d] the tort liability of another party to pay for "bodily injury." ' Thus, the 'insured contract' issue is joined only when indemnification is sought." 362 Ill. App. 3d at 574. Since Capital did not seek indemnification, the court found that Northern did not have a duty to defend De Graf and affirmed the circuit court. 362 Ill. App. 3d at 574-75. We granted Virginia Surety's petition for leave to appeal. 177 Ill. 2d R. 315(a).


ANALYSIS

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992); 735 ILCS 5/2–1005(c)) (West 2002). A circuit court's entry of summary judgment is subject to *de novo* review (*General Agents Insurance Co. of America, Inc. v. Midwest*

*Sporting Goods Co.*, 215 Ill. 2d 146, 153 (2005)), and the construction of an insurance policy, which presents a question of law, is likewise reviewed *de novo* (*Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004)). Similarly, an indemnity agreement is a contract and is subject to contract interpretation rules. See *Mountbatten Surety Co. v. Szabo Contracting, Inc.,* 349 Ill. App. 3d 857, 868 (2004). The cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language. *Central Illinois Light Co.*, 213 Ill. 2d at 153. If the contract language is unambiguous, it should be given its plain and ordinary meaning. *Central Illinois Light Co.*, 213 Ill. 2d at 153.

In Illinois, an employer's liability for an injury to its employee may come in several forms. The employer's exposure to pay benefits to an injured employee pursuant to the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2000)) is the most common. The Act provides a schedule for identifying the compensation for specific injuries and generally places financial limits on the employer's liability. See 820 ILCS 305/7, 8 (West 2000). The employer gives up its common law defenses to the employee's claim, such as the employee's contributory fault in causing his own injuries, in exchange for limited liability. 820 ILCS 305/5, 11 (West 2000).

An injured employee may also have a cause of action against a third party to the employment relationship, such as a general contractor, whose negligence allegedly caused or contributed to the employee's injuries. The Workers' Compensation Act does not limit the employee's recovery from a third party. Although the employee is barred from bringing a civil suit directly against his employer, the third-party nonemployer may file a third-party suit against the employer for "contribution" toward the employee's damages. 740 ILCS 100/1 *et seq.* (West 2000). The contribution lawsuit presents a second type of liability exposure for the employer.

The concept of contribution contemplates that each party whose fault contributed to an injury should pay its *pro rata* share of the common liability. 740 ILCS 100/2, 3 (West 2000). Until 1978, employers were immune from third-party contribution suits as well as from direct civil suits by an injured employee. *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1 (1977). We found in *Skinner v. Reed-Prentice Division Package Machinery Co.*,

70 Ill. 2d 1 (1977), that if a manufacturer was held liable on the basis of strict liability in tort, and if the employer-buyer negligently used the product, the manufacturer could recover on a third-party complaint against the employer-buyer. This holding was based on governing equitable principles, which "required that ultimate liability for plaintiff's injuries be apportioned on the basis of the relative degree to which the defective product and the employer's conduct proximately caused them." *Stevens v. Silver Manufacturing Co.*, 70 Ill. 2d 41, 44 (1977), citing *Skinner*, 70 Ill. 2d 1. In doing so, we discarded certain outmoded concepts of indemnity in favor of contribution. *Skinner*, 70 Ill. 2d at 11-13.

Through decisions of this court and the enactment of the Joint Tortfeasor Contribution Act, Illinois employers became potentially liable for unlimited contribution. See *Skinner*, 70 Ill. 2d 1, *Doyle v. Rhodes*, 101 Ill. 2d 1 (1984), citing Ill. Rev. Stat. 1981, ch. 70, par. 301 *et seq.*; 740 ILCS 100/1 *et seq.* (West 2000). An Illinois employer enjoyed limited liability to its employee under the Workers' Compensation Act, but was exposed to unlimited contribution liability for the same injuries as a third-party defendant in the employee's civil suit. In other words, the employer could be "third partied" into its employee's suit against a nonemployer tortfeasor and be ordered to pay a sum according to its *pro rata* share of fault in causing the employee's injury. *Doyle*, 101 Ill. 2d at 8, 14. The result was to deprive the employer of the limited liability conferred by the Workers' Compensation Act.

In 1992, this court attempted to balance the competing interests of the employer, as a participant in the workers' compensation system, and the equitable interests of the third-party defendant in not being forced to pay more than its established fault. *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 164-65 (1991). In *Kotecki*, we held that an employer's maximum liability in a third-party suit for contribution is limited to its liability to its employee under the Workers' Compensation Act. *Kotecki*, 146 Ill. 2d at 165. This balance allowed nonemployer defendants, such as general contractors, to recover limited contribution from the employer, and also extended the limited liability protection of the Workers' Compensation Act to contribution claims. *Kotecki*, 146 Ill. 2d at 165.

-6-

Thereafter, Illinois courts held that an employer may waive its *Kotecki* protection by contract and thereby be liable for its full *pro rata* share of contribution. *Liccardi v. Stolt Terminals, Inc.*, 178 Ill. 2d 540 (1997); *Braye v. Archer-Daniels-Midland Company*, 175 Ill. 2d 201 (1997); see also *Herington v. J.S. Alberici Construction Co.*, 266 Ill. App. 3d 489 (1994). These cases are based upon an interpretation of what are loosely labeled "indemnity provisions" contained in contracts to which the employer was a party, which act as provisions allowing for contribution. See, *e.g., Estate of Willis v. Kiferbaum Construction Corp.*, 357 Ill. App. 3d 1002, 1006 (2005); *Herington,* 266 Ill. App. 3d at 494. Typically, an "indemnity provision" will require a subcontractor to "indemnify and hold harmless" a general contractor or owner for the general contractor's liability for injury to person or property happening in connection with the subcontractor's work. Illinois courts have found that a third party seeking this type of "partial indemnity" is truly seeking contribution. *Stevens*, 70 Ill. 2d at 46 (noting, "Although stated in terms of partial indemnity rather than contribution, the prayer for relief clearly seeks contribution based on the relative degree to which the employer's misuse of the product or assumption of the risk contributed to cause plaintiff's injuries"); *Estate of Willis*, 357 Ill. App. 3d at 1006; *Herington*, 266 Ill. App. 3d at 494.

Stated another way, in these provisions, an employer agrees to unlimited liability by waiving the *Kotecki* limitation as to contribution claims. *Braye*, 175 Ill. 2d at 210. As such, the employer is waiving its affirmative defense provided by the Workers' Compensation Act. *Braye*, 175 Ill. 2d at 210. Nothing in *Kotecki* prohibits an employer from volunteering to remain liable for its *pro rata* share of damages proximately caused by its negligence; *Kotecki* simply allows the employer to avail itself of the *Kotecki* cap on its liability. *Braye*, 175 Ill. 2d at 210.

We note that such contracts are governed by the Illinois Construction Contract Indemnification for Negligence Act (Anti-Indemnification Act) (740 ILCS 35/0.01 *et seq.* (West 2000)), which voids any agreement in a construction contract to indemnify or hold harmless a person from that person's own negligence. The purpose of the Anti-Indemnification Act is to foster workplace safety by preventing a party from insulating itself from liability through use of

a contractual indemnification provision which may deter the exercise of ordinary care. *Braye*, 175 Ill. 2d at 216-17. For example, the Anti-Indemnification Act would render void a contractual provision in which a subcontractor agreed to pay all damages resulting from an injury to its employee, even the *pro rata* share of a general contractor who was partially at fault. 740 ILCS 35/1 (West 2000).

Thus, in *Braye v. Archer Daniels*, 175 Ill. 2d 201 (1997), we found that a so-called "indemnity provision" in a construction contract did not require a contractor-employer to indemnify a premises owner for the owner's negligence. *Braye*, 175 Ill. 2d at 217-18. The employer's employee had sued the owner for a job site injury, and the owner filed a third-party complaint for contribution against the employer. We deemed the employer to have waived its *Kotecki* protection and thus could be held liable in contribution for its full share of fault in causing its employee's injuries. The provision merely permitted "unlimited contribution" from the employer to the owner and, therefore, did not violate the Anti-Indemnification Act. 175 Ill. 2d at 218.

Inevitably, both employers and their insurance carriers were faced with the question of whether their insurance policies would cover the employer's remaining portion of liability when an employer elected to waive the *Kotecki* protections. In other words, the nature of the employer's "*Kotecki* waiver" exposure–the employer's liability in contribution above its "*Kotecki* cap"–remained in doubt for purposes of standard CGL policies and some employer's liability policies. The districts of our appellate court are split on this issue.

The first case, *Hankins v. Pekin Insurance Co.*, 305 Ill. App. 3d 1088 (1999), decided by the Fifth District of the appellate court, arose in a nonconstruction setting. The "indemnity provision" and the CGL insurance policy's definition of "insured contract" were similar to those in this case. The court ruled that the "indemnity provision" did not constitute an "insured contract" under the policy's definition of that term because, by agreeing to be held liable for unlimited contribution, the employer was simply agreeing to accept the full share of its "own negligence" and was not accepting the "tort liability of another party." In other words, an "insured contract" is one where the insured agrees to indemnify the other party against that party's own negligence. *Hankins*, 305 Ill. App. 3d at 1093. Because the

employer's potential liability under the provision did not come within the employer's "insured contract" coverage, the insurer had no obligation to defend or indemnify it with respect to a third-party claim for indemnification. *Hankins*, 305 Ill. App. 3d at 1093.

The next case reached a contrary result when the appellate court construed a workers' compensation and employer's liability policy. In *Christy-Foltz, Inc. v. Safety Mutual Insurance Casualty Corp.*, 309 Ill. App. 3d 686 (2000), the Fourth District of the appellate court found a "*Kotecki* waiver" in a contract between an employer and the owner of a worksite. *Christy-Foltz*, 309 Ill. App. 3d at 691. The court found that, by agreeing to waive the right to invoke *Kotecki* as an affirmative defense, the employer had "voluntarily assumed liability" for its *pro rata* share of damages proximately caused by its own negligence. *Christy-Foltz*, 309 Ill. App. 3d at 692. As a result, the liability over and above the *"Kotecki* cap" would be allocated pursuant to the Contribution Act. Any such liability would constitute "loss" under the terms of the policy. This "loss" would not be covered because the policy excluded coverage for "loss" which was "voluntarily assumed" under contract. 309 Ill. App. 3d at 692-93.

Next, the Second District in *Michael Nicholas, Inc. v. Royal Insurance Co. of America*, 321 Ill. App. 3d 909 (2001), also rejected the *Hankins* decision. The Second District found the policy provided coverage. It stated,

> "By defining 'insured contract' in terms of assuming another party's 'tort liability,' [the CGL insurer] left open the possibility that its insured could agree to be responsible for another party's liability in a tort action even if that liability was not based on that party's own negligence. That portion of [the general contractor's] liability to [the injured subcontractor's employee] (which was assumed by plaintiff pursuant to its *Kotecki* waiver) that is attributable to [subcontractor's] negligence is in fact imposed on [the general contractor] by law, *i.e.*, joint and several liability." *Michael Nicholas, Inc.*, 321 Ill. App. 3d at 914.

The court further found that the contract did not run afoul of the Anti-Indemnification Act. The court stated that it was "difficult to envision any situation where the exception would apply in plaintiff's line of work because if plaintiff ever agreed to indemnify another party for its

own negligence, the contract would be unenforceable." 321 Ill. App. 3d at 914-15.

The Second District subsequently reaffirmed this decision in *West Bend Mutual Insurance Co. v. Mulligan Masonry Co.*, 337 Ill. App. 3d 698 (2003), over a dissent. *Mulligan* involved the same contractual "indemnity" provision and the same definition of "insured contract." The court relied on the reasoning of *Michael Nicholas*, stating:

> "There is nothing in the policy, however, stating that the 'insured contract' exception applies only when the insured agrees to assume liability greater than its percentage of fault. Here, if defendant's *Kotecki* cap is lower than the amount of [the employee's] damages that is attributable to defendant's negligence, then, under principles of joint and several liability, [the general contractor] can be held liable in tort for the difference. Relying on the indemnification clause, [the general contractor] attempted to recover that amount. If defendant has waived its *Kotecki* cap, then it has assumed tort liability that otherwise would have been imposed against [the general contractor]." (Emphasis omitted.) *West Bend*, 337 Ill. App. 3d at 706.

The court stated that plaintiff's argument that an insured who waives a *Kotecki* cap is merely waiving an affirmative defense and is not assuming tort liability that did not already exist is a "technical distinction." *West Bend*, 337 Ill. App. 3d at 706. "Indemnification clauses like the one at issue here are intended to shift tort liability that otherwise would be imposed against the indemnitee." *West Bend*, 337 Ill. App. 3d at 706.

Justice McLaren vigorously dissented. *West Bend*, 337 Ill. App. 3d at 708 (McLaren, J., dissenting). He noted, "As the discussion of *Michael Nicholas* reveals, a party's tort liability is not necessarily based on that party's own negligence." *West Bend*, 337 Ill. App. 3d at 709 (McLaren, J., dissenting). According to Justice McLaren, the majority characterized aspects of tort liability that are preexisting and imposed by operation of law, as being assumed under the terms of the indemnification contract in question. Justice McLaren stated,

> "However the analysis contained in *Michael Nicholas* characterizes aspects of tort liability that are *preexisting and*

*imposed by operation of law*, as being assumed under the terms of the indemnification contract in question. The major deficiency *** is that they ignore the distinction between those matters that are imposed by law and those that have been assumed by the insured through the indemnification contract. The joint and several liability analysis in *Michael Nicholas* presumes that the insured assumed the joint and several liability of all the joint and several tortfeasors. *** Joint and several liability is not assumed by a tortfeasor; if it were, it could be disclaimed or avoided by mere iteration." (Emphasis in original.) *West Bend*, 337 Ill. App. 3d at 709 (McLaren, J., dissenting).

Justice McLaren pointed out that if the joint and several liability were assumed, then it would mean that the nonemployer-indemnitee would be able to obtain total satisfaction of the judgment entered in the original cause of action in violation of Indemnification Act and would constitute a waiver of all the immunities provided to an employer-indemnitor pursuant to the Workers' Compensation Act. *West Bend*, 337 Ill. App. 3d at 711 (McLaren, J., dissenting). Further, "the waiver of the *Kotecki* cap is a *waiver of a right* to a credit or offset that is provided by law and would reduce the amount of money due from the insured. [Citation.] Neither reducing nor increasing the out-of-pocket expense of the employer/indemnitor means that the proportionate shares of liability have been altered." *West Bend*, 337 Ill. App. 3d at 711 (McLaren, J., dissenting). He concluded, "I believe the only reasonable interpretation is that the employer/indemnitor agreed to indemnify the nonemployer/indemnitee for the employer/indemnitor's own negligence consistent with the prior precedent as determined in *Hankins*." *West Bend*, 337 Ill. App. 3d at 712 (McLaren, J., dissenting).

With this precedent in mind, we turn to the present agreement between Capital Construction and De Graf under the terms of Northern's CGL policy. The parties' arguments on this matter are essentially reflective of the split in the appellate court: Northern urges this court to adopt the reasoning of the Fifth District in *Hankins* and Justice McLaren's dissent in *West Bend*; Virginia Surety contends this court should adopt the reasoning of the Second District in *Michael Nicholas* and the *West Bend* majority and also the Fourth District in

*Christy-Foltz*. We agree with Northern that under the plain language of Northern's CGL policy with De Graf, the agreement between De Graf and Capital could not be an "insured contract."

Northern's policy provides that an insured contract is one under which De Graf "assumes the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." The policy further provides that "tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Therefore, to determine whether the De Graf-Capital "indemnity" agreement is an insured contract under the policy, we must first look to the agreement itself and determine whether the agreement obligated De Graf to assume the tort liability of Capital.

The agreement in this case is unambiguous. By the plain language of the agreement, De Graf, as the indemnifying party, is required to "indemnify" Capital only for De Graf's own negligence. The meaning of "indemnify" is illuminated by the contractual language stating that De Graf, "to the fullest extent permitted by law *** shall indemnify and hold harmless" Capital for claims "arising out of or resulting from the performance of the subcontractor's work" and "loss *** which is caused in whole or in part by negligent acts or omissions of the Subcontractor." Further, this is despite any common liability on the part of Capital for Smith's injury, as the contract states, "regardless of whether or not such claim, loss, or expense is caused in part by a party indemnified hereunder."

The confusion may be due to the use of the word "indemnity" when the effect of the provision is nothing more than a simple anticipatory waiver of an affirmative defense in a contribution action. Virginia Surety's contention therefore ignores the distinction between "indemnity" and "contribution." Contribution is defined as "the right that gives one of several persons who are liable on a common debt the ability to recover ratably from each of the others when that one person discharges the debt for the benefit of all; the right to demand that another who is jointly responsible for a third party's injury supply part of what is required to compensate the third party." Black's Law Dictionary 352-53 (8th ed. 2004). Indemnity is the "reimbursement or compensation for loss, damage, or liability in tort; esp., the right of a party who is secondarily liable to recover from the party who is primarily liable for reimbursement of expenditures paid to a third party

-12-

for injuries resulting from a violation of a common-law duty." Black's Law Dictionary 784 (8th ed. 2004).

With these definitions in mind, we look to the definition of "tort liability" in the CGL policy. The policy's "insured contract" provision says, "Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Therefore, we must walk through the procedural steps of this case to understand if De Graf assumed any "liability imposed by law" upon Capital. In other words, we must determine if the subcontract above is a true indemnification provision, or a poorly labeled anticipatory waiver of an affirmative defense.

Preliminarily, it is clear that ordinary rules of common law liability impose liability upon Capital for Capital's own negligence towards Smith. Next, De Graf is liable for its own negligence under ordinary rules of common law liability. However, De Graf enjoys the option to limit its common law liability to Smith by asserting the affirmative defense provided by the Workers' Compensation Act for the amount of its negligence up to the *Kotecki* cap. This leaves the portion of De Graf's liability due to its *pro rata* share of the common liability above the *Kotecki* cap. Is this portion of liability "imposed by law in the absence of any contract or agreement" on Capital or De Graf?

Both Capital and De Graf are jointly and severally liable for the portion of De Graf's liability above the *Kotecki* cap. However, the Contribution Act states, "The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his pro rata share of the common liability." 740 ILCS 100/2(b) (West 2000). The law therefore allows Capital to sue De Graf for De Graf's remaining *pro rata* portion of the common liability. Under the terms of the Contribution Act, Capital is not liable to make contribution beyond its *pro rata* share of the common liability.

Next, if Capital brings a contribution claim against De Graf, De Graf remains liable for its *pro rata* share of the common liability. 740 ILCS 100/2(b) (West 2000). Under *Kotecki*, however, De Graf may assert the Workers' Compensation Act as an affirmative defense in an action in contribution. *Braye*, 175 Ill. 2d at 207, citing *Doyle*, 101 Ill.

2d at 10. Our decision in *Braye* allows De Graf to bargain away this affirmative defense by contract in anticipation of litigation. Here, De Graf has waived its affirmative defense provided by the Workers' Compensation Act and is liable for unlimited contribution, undiminished by the workers' compensation limitation. Accordingly, this demonstrates that the Workers' Compensation Act is a shield provided by the legislature, which, at De Graf's *election*, it may use to avoid liability. This idea is bolstered by our statement in *Braye* that "an employer's potential for tort liability exists unless and until the defense of the Workers' Compensation Act is established." Furthermore, "the legislature intended the Contribution Act to apply to an employer in a third-party action regardless of an employer's immunity from a direct action by the employee." *Braye*, 175 Ill. 2d at 207, citing *Doyle*, 101 Ill. 2d at 10-11, 13-14.

The legislature intended that De Graf be liable for its *pro rata* share of the negligence, regardless of any immunity provided by the Workers' Compensation Act. Absent De Graf's waiver, Capital would be obligated to pay a greater portion of the common liability only at De Graf's *election* to raise its affirmative defense. As we previously stated, "nothing in *Kotecki* prohibits an employer from agreeing to *remain* liable for its *pro rata* share of damages proximately caused by its negligence." (Emphasis added.) *Braye*, 175 Ill. 2d at 210. Therefore, absent any contract or agreement, De Graf's portion of the common liability above the *Kotecki* cap is not "imposed by law" upon Capital, but remains with De Graf.

Returning to the definitions of "contribution" and "indemnity" above, it is clear both Capital and De Graf are jointly and severally liable for the same injury. Further, both parties are primarily liable for Smith's injuries; neither party is secondarily liable. As explained above, the waiver of the *Kotecki* cap does not shift liability. Rather, the employer chooses to *remain* liable by not asserting an affirmative defense. The legal effect to be given an instrument is not determined by the label it bears or the technical terms it contains. *Bonde v. Weber*, 6 Ill. 2d 365 (1955); see *Herington*, 266 Ill. App. 3d 489. Indeed, this court in *Stevens v. Silver Manufacturing Co.*, 70 Ill. 2d 41, 46 (1977), construed a third party's prayer for "partial indemnity" as a contribution claim because the prayer was based on the relative degree to which the employer's misuse of the product or assumption of the

risk contributed to cause plaintiff's injuries. Thus, we disagree with the *West Bend* court's conclusion that, "Indemnification clauses like the one at issue here are intended to shift tort liability that otherwise would be imposed against the indemnitee" (*West Bend*, 337 Ill. App. 3d at 706) because the De Graf-Capital contract is not a true indemnification clause.

Further, we reject Virginia Surety's, as well as the *Christy-Foltz*, *Michael Nicholas*, and *West Bends* courts', assertion that the employer somehow assumes the joint and several liability of the third-party nonemployer. This argument may conflate the indivisible nature of joint and several liability with the equitable apportionment of common liability embodied in the Contribution Act. 740 ILCS 100/2 (West 2000). It is clear, from the Contribution Act, that "[n]o tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." 740 ILCS 100/2 (West 2000). Virginia Surety also argues, however, that De Graf would somehow "assume" the joint and several liability of Capital for De Graf's own negligence. The false premise in this argument is the belief that this joint and several liability is somehow divisible. As we explained in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997), " 'The feasibility of apportioning fault on a comparative basis does not render an indivisible injury "divisible" for purposes of the joint and several liability rule. A concurrent tortfeasor is liable for the whole of an indivisible injury when his negligence is a proximate cause of that damage.' " *Best*, 179 Ill. 2d at 427, quoting *Coney v. J.L.G. Industries, Inc.*, 97 Ill. 2d 104, 121-22 (1983). Thus, it makes no difference if the *Kotecki* cap is lower than the amount of the employee's damages that is attributable to employer's negligence. Under principles of joint and several liability, the third party does not then become liable for the difference. Instead, it always was jointly and severally liable regardless of the *Kotecki* cap and it additionally always retained the right to sue in contribution. The distinguishing factor is the employer's use of the affirmative defense of the Workers' Compensation Act.

The Anti-Indemnification Act also does not prohibit this contract. As explained above, the contract merely waives De Graf's affirmative defense; it does not result in De Graf's assumption of Capital's tort liability. We also reject Virginia Surety's argument that because of the

-15-

anti-indemnity statute applicable to Illinois construction contracts, every single "insured contract" situation De Graf might encounter will involve an unenforceable contract, and so Northern's exception "would almost never apply" and be "of no value to the insured." This reasoning ignores that the CGL coverage Northern issued to De Graf is not limited to suits arising out of construction contracts. Nor is the policy limited to suits brought under Illinois law. For example, De Graf may enter a contract to hire a maintenance company to service its equipment or clean its building, where the other party is to be indemnified by De Graf.

In sum, De Graf and Capital intended the provision in the subcontract be a waiver of De Graf's anticipated affirmative defense in a potential contribution action rather than any purported assumption of Capital's joint and several liability. Therefore, the policy's definition of "insured contract" has not been met. De Graf did not assume Capital's "tort liability," because it has not assumed Capital's "tort liability" which the policy defines as "liability that would be imposed by law in the absence of any contract or agreement."

Accordingly, we agree with the appellate court that Northern is not under a duty to defend or indemnify De Graf under the CGL policy. Hence, the circuit court properly granted summary judgment in favor of Northern. To the extent that *Michael Nicholas*, *West Bend*, and *Christy Foltz* would hold otherwise, they are overruled.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed*.