**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250167-U

Order filed March 3, 2026

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| BRADLEY O'DONNELL, as Trustee of the Bradley O'Donnell Trust dated October 25, 2018, | ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0167 Circuit No. 22-CH-158 |
| FRANK BRADLEY SR.; JOSEPHINE A. BRADLEY, as Trustee of the Josephine A. Bradley Trust dated April 29, 1999; and DUNREE HOMES, INC., an Illinois Corporation, | ) ) ) ) ) | The Honorable Bryan S. Chapman and Bonnie M. Wheaton, |
| Defendants-Appellees. | ) ) | Judges, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Hettel and Justice Holdridge concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court correctly found that plaintiff's right of first refusal had not been triggered and properly granted summary judgment for defendants on plaintiff's contract-related claims in plaintiff's fifth amended complaint on that basis. In addition, plaintiff abandoned his implied easement claims from his second amended complaint by failing to replead or refer to those claims in his subsequent complaints after those claims were dismissed by the trial court. Affirmed.

¶ 2        Plaintiff, Bradley O'Donnell, as Trustee of the Bradley O'Donnell Trust, filed a civil

lawsuit against defendants, Frank Bradley Sr.; Josephine A. Bradley, as Trustee of the Josephine

A. Bradley Trust; and Dunree Homes, Inc., relating to defendants' efforts to develop and sell the

vacant and unimproved residential lot that was adjacent to plaintiff's property. Plaintiff alleged at

various times both easement and contract-related claims. Acting on motions filed by defendants,

the trial court dismissed with prejudice the implied easement claims that were contained in

plaintiff's second amended complaint and later granted summary judgment on the contract-

related claims that were contained in plaintiff's fifth amended complaint. Plaintiff appeals those

rulings. We affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4        The underlying facts in this case are not in dispute. Defendant, the Josephine A. Bradley

Trust (Bradley Trust), owned two adjacent residential lots in Burr Ridge, Du Page County,

Illinois. The lots were in Bradley Estates and were designated as Lots 1 and 2. Lot 1 was located

just to the north of Lot 2.

¶ 5        In approximately 2000, codefendant, Frank Bradley Sr., who was a contractor and land

developer, built a home or had a home built on the south lot, Lot 2. After the home was

constructed, Frank Sr. and his wife, Josephine, moved into the home and used it as their primary

residence for the next several years. During that time period, the north lot, Lot 1, remained

vacant and unimproved and was owned by the Bradley Trust.

¶ 6        The home that Frank Sr. built on Lot 2 was large (8,300 square feet) and extended almost

to the property lines in some places. The home was positioned on Lot 2 with the front of the

home generally facing west and the rear of the home generally facing east. The outside of the

home had extensive landscaping and a driveway that crossed over the property line onto Lot 1. In

2

addition, there was a drainage and detention easement that ran along the east property line of Lot 2 for the benefit of Lot 1 and, for that purpose, a retention wall, which was nearly four feet high in some places, was built on Lot 2 to contain groundwater drainage. Because of the size of the home, the extensive landscaping, and the retention wall, the rear yard (east portion) of Lot 2 was difficult to access with larger equipment, such as for mowing or other purposes. The only access to that area was by way of a small footpath. To accomplish mowing and other tasks in the rear yard of Lot 2, Frank Sr. and Josephine (and/or hired workers) would travel over the south side of Lot 1 to access that area. Doing so did not cause any problems at the time because the Bradley Trust owned both lots and because Lot 1 was still vacant.

¶ 7　　　In October 2018, the Bradley Trust sold Lot 2 to plaintiff, the Bradley O'Donnell Trust (O'Donnell Trust), a land trust whose trustee and sole beneficiary was Bradley O'Donnell. Shortly before the sale (presumably), the driveway was changed so that it no longer crossed over the property line onto Lot 1. To effectuate the sale, the two trusts entered into a written real estate contract. Among other things, the contract provided that the Bradley Trust (seller) would grant the O'Donnell Trust (buyer) a right of first refusal as to the Lot 1 property (vacant lot).

¶ 8　　　The sale closed the following month. At or just prior to the closing, the two trusts executed a right of first refusal agreement (first refusal agreement) as the real estate contract had required. The first refusal agreement was made to survive the closing of the sale.

¶ 9　　　After the sale closed, O'Donnell moved into the home on Lot 2 and used it as his primary residence. From that time forward, O'Donnell traveled across the south side of the vacant lot to access the rear yard of Lot 2 for mowing and various other purposes, the same as Frank Sr. and Josephine had done when they lived in the home on Lot 2.

3

¶ 10        In March 2022, Frank Sr. and codefendant, Dunree Homes, Inc. (Dunree), applied for a building permit from the Village of Burr Ridge to construct a single-family home on Lot 1. Dunree was a contracting/homebuilding company that was solely owned by Frank Bradley Jr., the son of Frank Sr. and Josephine. The Village later approved the permit. On the permit, Dunree was listed as the contractor for the project.

¶ 11        Upon learning of the building permit, O'Donnell contacted Frank Jr. and attempted to confirm O'Donnell's ongoing reliance on Lot 1 as a means of accessing the rear yard of Lot 2. Despite O'Donnell's efforts, defendants declined to enter a formal agreement or record any existing or established easements over Lot 1 for the benefit of Lot 2.

¶ 12        In July 2022, the Bradley Trust conveyed Lot 1 to Dunree. Defendants did not give formal notice to plaintiff prior to or after the transfer and did not provide plaintiff with his right of first refusal. After the transfer occurred, Dunree put a construction fence up around Lot 1 pursuant to the requirements of the Village Code. The construction fence prevented O'Donnell from using Lot 1 to access the rear yard of Lot 2.

¶ 13        Later that same month (July 2022), plaintiff filed the instant lawsuit against defendants. In the original complaint, plaintiff sought to have the trial court enter an order declaring that an easement existed over Lot 1 (an easement by implication because of necessity, an easement by implication through prior use, and/or a prescriptive easement) for the benefit of Lot 2 that allowed ingress and egress over the Lot 1 property for the purpose of accessing the rear yard of Lot 2. Plaintiff also sought to have the trial court grant temporary and permanent injunctive relief to prevent defendants from doing anything that would diminish, impede, or frustrate plaintiff's exercise of his easement rights.

4

¶ 14    In August 2022, Dunree obtained a construction loan and executed a mortgage for the development of the Lot 1 property. Construction on the project started soon thereafter.

¶ 15    In December 2022, after obtaining leave of court, plaintiff filed a first amended complaint and withdrew his original complaint. In the first amended complaint, plaintiff again asserted the three easement claims and the injunctive relief claim from the original complaint and added claims for specific performance and breach of contract. Defendants filed a combined motion to dismiss all six claims pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (see 735 ILCS 5/2-615, 2-619, 2-619.1 (West 2022)), and plaintiff was allowed to conduct limited discovery regarding the matters raised in the motion to dismiss. In March 2023, following full briefing and a hearing on the matter, the trial court granted defendants' motion to dismiss in part and denied defendants' motion in part. In its ruling, the trial court also granted plaintiff leave to replead some of his claims.

¶ 16    In May 2023, plaintiff filed a six-count second amended complaint. In counts I and II of the second amended complaint, plaintiff replead his implied easement claims. In counts III, IV, and V, plaintiff referenced his prior claims for easement by prescription, injunctive relief, and specific performance and noted that those claims had all previously been stricken or dismissed by the trial court. In count VI, plaintiff replead his breach of contract claim, alleging that defendants had violated plaintiff's right of first refusal. Plaintiff attached various supporting documents to the second amended complaint, including a copy of the plat of survey for Lot 2, aerial photos of Lots 1 and 2 showing the various developments on the lots over the years, and ground-level photos of the landscaping in the relevant areas of Lot 2.

¶ 17    Defendants filed a section 2-615 motion to dismiss the active counts of plaintiff's second amended complaint (counts I, II, and VI). As to the easement counts, defendants asserted that

5

plaintiff's allegations were insufficient to establish an implied easement by either necessity or prior use. As to the contract count, defendants asserted that plaintiff had failed to attach to the complaint the contract upon which plaintiff's claim was based.

¶ 18        In August 2023, following full briefing on the issues raised, the trial court held a hearing on defendants' motion to dismiss. After listening to the oral arguments of the attorneys, the trial court granted the motion. The trial court dismissed the two implied easement counts with prejudice, dismissed the one breach of contract count without prejudice, and granted plaintiff leave to replead the contract count.

¶ 19        The following month, plaintiff filed his third amended complaint. In the first five counts of the third amended complaint, plaintiff referred to the prior counts from his earlier pleadings, including his two implied easement counts, and noted that those prior counts had either been stricken or dismissed. In count VI, plaintiff replead his breach of contract claim.

¶ 20        Defendants again filed a section 2-615 motion to dismiss the active breach of contract claim, and the trial court granted the motion following full briefing and a hearing on the matter. The trial court dismissed the contract claim with prejudice as to defendant Dunree, without prejudice as to codefendants the Bradley Trust and Frank Sr., and granted plaintiff leave to file "one final amended count for breach of contract" against Frank Sr. and the Bradley Trust. The trial court provided further in its order that plaintiff was required to request leave of court to "file any additional counts or claims against other defendants."

¶ 21        In March 2024, plaintiff filed his fourth amended complaint. The fourth amended complaint contained one count for breach of contract against the Bradley Trust and Frank Sr. and did not replead or refer to any of plaintiff's other claims that had previously been stricken or dismissed. Later that same month, however, plaintiff filed a motion seeking leave from the trial

court to file a fifth amended complaint and to add two additional contract-related claims. In particular, plaintiff requested leave to replead his specific performance claim that had previously been dismissed by the trial court without prejudice and also to add a new claim for tortious interference with contract against Frank Sr. and Dunree. The trial court granted plaintiff's motion over defendants' objection.

¶ 22 In May 2024, plaintiff filed his fifth amended complaint, the pleading at issue in this case. The fifth amended complaint contained three counts (contract-related claims) and did not replead or refer to plaintiff's prior claims that had been stricken or dismissed, other than the specific performance claim. Count I alleged a claim of breach of contract against the Bradley Trust and Frank Sr., count II alleged a claim of tortious interference with contract against Frank Sr. and Dunree, and count III alleged a claim for specific performance against the Bradley Trust. All three claims were based upon the first refusal agreement.

¶ 23 Defendants filed a motion for summary judgment on plaintiff's fifth amended complaint. In the motion, defendants asserted that summary judgment should be granted in their favor on all three of plaintiff's contract-related claims because the Bradley Trust had not breached the first refusal agreement. Plaintiff filed a cross-motion for partial summary judgment and took the opposite position. Both sides filed written briefs on the matter and submitted various documents in support of their respective positions.

¶ 24 One of the documents that was submitted to the trial court in the summary judgment proceeding was the first refusal agreement, which, of relevance to this appeal, contained the following provisions:

"2. For so long as Lot 1 (the "Property") remains vacant and unimproved, if Seller receives either a bona fide written offer by a willing third party to

7

purchase the Property which Seller intends to accept, or a purchase agreement which Seller intends to enter into (collectively, "Offer"), Seller shall give written notice to Purchaser at the address provided below accompanied by a copy of such Offer at least forty-five (45) days before the date of contemplated sale.

* * *

5. Anything contained herein to the contrary notwithstanding, in the event of any of the following, the Right of First Refusal shall be deemed not to have arisen and shall not apply to:

>     (a) A transfer of the Property by Seller to a trust, LLC or partnership formed in which either or both Francis Bradley and/or Josephine Bradley are the sole beneficiaries, members or partners; and

>     (b) Any like-kind exchange in respect to the Property under §1031 of the Internal Revenue Code or any sale or transfer of the Property for non-cash consideration; and

>     (c) Any gift or donation of the Property.

6. Termination. The improvement of the Property by Seller, Seller's affiliates or any member of Seller's immediate family or Purchaser's sale of Lot 2 shall terminate the Right of First Refusal, it being the express intention of the parties that the Right apply only to the Property if vacant and unimproved and only for so long as Purchaser is the owner of Lot 2."

¶ 25     Another document that was submitted in the summary judgment proceeding was the deposition of Frank Jr., which was taken in February 2023. Of relevance to this appeal, Frank Jr.

testified in his deposition that neither of his parents (Frank Sr. and Josephine) ever had any ownership interest in Dunree. In late 2021, Dunree first became interested in developing Lot 1. Frank Jr. talked to Frank Sr. (or to both his parents) about Dunree building a speculative (spec) home on Lot 1, and Frank Sr. stated that they (Frank Sr., Josephine, and Frank Jr.) would work something out. Frank Sr. also mentioned that plaintiff had a right of first refusal to buy Lot 1 and told Frank Jr. to contact O'Donnell to discuss the matter. Frank Jr. did so in January 2022, and he and O'Donnell went back and forth on price but were never able to come to an agreement. When Frank Jr. was asked in his deposition if his parents would get any of the profits when the spec home on Lot 1 was eventually sold, he responded that he would compensate his parents (presumably, the Bradley Trust) for the property and that they would come to some kind of agreement as to what was a fair value for that compensation. The amount of the compensation was still an open matter at the time of the deposition, and Frank Jr. had no number or estimate as to what that amount would be.

¶ 26        Frank Jr. stated further in his deposition that there was no discussion about the Bradley Trust transferring Lot 1 to Dunree until the bank told Frank Jr. that it would be easier for Dunree to get a construction loan for the development of Lot 1 if the property was transferred to Dunree. Frank Jr. called Frank Sr. about the matter, and Frank Sr. stated that he would talk to his attorney and that they (Frank Sr. and his attorney) would sort something out. The property was later deeded by the Bradley Trust to Dunree in July 2022. At the time of the transfer, Lot 1 was still vacant and unimproved. Dunree put up a construction fence around Lot 1 in July 2022 and broke ground on the development of Lot 1 in August 2022. Frank Jr. testified that he probably became aware of the first refusal agreement when he talked to Frank Sr. about developing the Lot 1

9

property or when Frank Jr. received a call from O'Donnell after O'Donnell had learned that the Bradley Trust had transferred Lot 1 to Dunree.

¶ 27 A third document that was submitted to the trial court in the summary judgment proceeding was the affidavit of O'Donnell. In his affidavit, O'Donnell attested to many of the facts set forth above. In addition, O'Donnell stated in his affidavit that during plaintiff's negotiation and purchase of Lot 2 in 2018, it was pointed out to O'Donnell that all equipment and materials for yard work, detention pond maintenance, and other needs in the rear yard of the home were loaded in from the north, through the south side of Lot 1. O'Donnell also made statements in his affidavit about what he believed the parties' intentions were in entering into the first refusal agreement. O'Donnell stated further in his affidavit that when it became apparent that Lot 1 was being prepared for development, he talked to Frank Sr. and was told that there was no offer on the lot and that if O'Donnell wanted to buy the lot, the Bradley Trust would consider a price that included the "opportunity cost" (the projected profit from the sale of a spec home), not just the cost of the lot itself.

¶ 28 In September 2024, the trial court held a hearing on the cross-motions for summary judgment. After thoroughly questioning the attorneys about their arguments, the trial court took the matter under advisement. In November 2024, the trial court issued its written decision finding that the Bradley Trust's transfer of Lot 1 to Dunree was not the result of a purchase agreement (sale), was done merely for the purpose of obtaining a construction loan for development purposes, and did not trigger plaintiff's right of first refusal. The trial court, therefore, granted defendants' motion for summary judgment as to all three of plaintiff's contract-related claims and denied plaintiff's motion.

¶ 29    Plaintiff filed a motion to reconsider, which the trial court denied as well. Plaintiff appealed.

¶ 30                                    II. ANALYSIS

¶ 31              A. Plaintiff's Contract-Related Claims (Summary Judgment)

¶ 32    As his first point of contention, plaintiff argues that the trial court erred in granting defendants' motion for summary judgment on plaintiff's contract-related claims (counts I, II, and III of the fifth amended complaint) and in denying plaintiff's cross-motion for partial summary judgment on those claims. In support of that argument, plaintiff makes numerous assertions. First, plaintiff contends that, contrary to the trial court's finding, the transfer of Lot 1 from the Bradley Trust to Dunree triggered plaintiff's right of first refusal because the undisputed facts showed that the transfer was a sale of Lot 1 to Dunree for an amount to be determined and paid later and was not merely a transfer of convenience for the purpose of obtaining a construction loan, as defendants maintained. According to plaintiff, even though defendants deliberately kept the price of the sale vague to try to get around plaintiff's right of first refusal, the right was still applicable and enforceable, as indicated in the case law in this area, because the language of the first refusal agreement provided a method for ascertaining the price and terms of the offer and allowed plaintiff to exercise his right by simply matching whatever terms Dunree had offered the Bradley Trust for the lot. Second, plaintiff contends that no event occurred in this case that would have terminated plaintiff's right of first refusal, as provided for in the first refusal agreement, because Lot 1 had not been improved prior to the transfer to Dunree and because Dunree was a separate legal entity and was not a family member or an affiliate of Frank Sr. and Josephine. Third, plaintiff contends that the trial court's ruling in this case will create public policy concerns, if allowed to stand, because it will greatly weaken the legal strength of a right of

11

first refusal and will allow any seller to easily get around such a right by making secret, unwritten deals with a preferred purchaser. Fourth and finally, plaintiff contends that the doctrine of legal impossibility, which has been asserted in this case by defendants, does not apply here because the Bradley Trust caused the alleged impossibility by transferring Lot 1 to Dunree and because defendants have the ability to remove that obstruction to performance. For all of the reasons stated,[1] plaintiff asks that we reverse the trial court's grant of summary judgment for defendants on plaintiff's contract-related claims, that we grant plaintiff's cross-motion for partial summary judgment on those claims, and that we remand this case for further proceedings.

¶ 33        Defendants argue that the trial court's ruling was proper and should be upheld. Specifically, defendants assert first, that the trial court correctly found, based upon the undisputed facts, that the Bradley Trust's transfer of Lot 1 to Dunree was not a sale, was done as a convenience for the purpose of obtaining a construction loan for the development of the property, and did not trigger plaintiff's right of first refusal. Second, defendants assert that the trial court correctly applied the case law in this area and correctly found that the transfer to Dunree provided no basis upon which to determine the price or proposed terms of an alleged sale because the transfer was not a sale and was entirely lacking in a specific price, terms, or conditions. Third, defendants contend that plaintiff's right of first refusal was terminated, as provided in the first refusal agreement, because the transfer of Lot 1 to Dunree was for the purpose of the Bradley Trust's development of the property using their son's company (Dunree) as the general contractor and because the lot was subsequently improved after the transfer

---

[1]Plaintiff also contends that the transfer of Lot 1 from the Bradley Trust to Dunree was not one of the type of transfers listed in the first refusal agreement that was exempt from plaintiff's right of first refusal (a transfer to one of Frank or Josephine's entities, a section 1031 like-kind exchange, or a gift or donation). Defendants, however, have not argued in this appeal that the transfer was an exempt transfer.

12

occurred. According to defendants, the situation that occurred in this case was the exact type of situation that was contemplated by and provided for in the plain and unambiguous terms of the first refusal agreement, which expressly allowed the Bradley Trust to transfer Lot 1 to an immediate family member (Frank Jr.) or an affiliate (Dunree) for the purpose of development and also stated that improvements to the property would terminate the right of first refusal. Fourth, defendants contend that the trial court's ruling in this case does not create any public policy concerns, despite plaintiff's assertion to the contrary, and that adoption of plaintiff's argument would create those concerns instead by encouraging a court to go past the plain and unambiguous language of a contract and to look for the secret intent and motives of the parties. Fifth and finally, defendants contend that the doctrine of impossibility applies in this case and that pursuant to that doctrine, the Bradley Trust cannot be compelled to specifically perform the first refusal agreement because it no longer owns the property and that Dunree cannot be ordered to transfer the property back to the Bradley Trust or to plaintiff because Dunree was not a party to the first refusal agreement. For all the reasons set forth, defendants ask that we affirm the trial court's ruling, granting defendants' motion for summary judgment on plaintiff's contract-related claims (counts I, II, and III of the fifth amended complaint) and denying plaintiff's cross-motion for partial summary judgment on those claims.

¶ 34        The purpose of summary judgment is not to try a question of fact, but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions on file, and affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2024); *Adams*, 211 Ill. 2d at 43. Summary judgment should not

13

be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* A trial court's grant of summary judgment is subject to a *de novo* standard of review on appeal. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 35 Absent an ambiguity, the interpretation of a contract is a question of law and is subject to a *de novo* standard of review on appeal. See *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007); *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 338-39 (2005); *Richard W. McCarthy Trust Dated September 2, 2004 v. Illinois Casualty Co.*, 408 Ill. App. 3d 526, 534-36 (2011). The primary goal of contract interpretation is to give effect to the intent of the parties, which is to be determined from the language of the contract. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). In determining the intent of the parties, a court must consider the contract document as a whole and not focus on isolated portions of the document. *Gallagher*, 226 Ill. 2d at 233; *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract document itself, which should be given its plain and ordinary meaning, and the contract should be enforced as written. *Virginia Surety Co.*,

14

224 Ill. 2d at 556; *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome*, Ltd., 194 Ill. App. 3d 744, 748 (1990); *Reaver v. Rubloff-Sterling, L.P.*, 303 Ill. App. 3d 578, 581 (1999).

¶ 36 In the present case, after reviewing the first refusal agreement, the other relevant portions of the trial court record, and the legal principles set forth above, we conclude that the trial court correctly found that the transfer of Lot 1 to Dunree did not trigger plaintiff's right of first refusal. The relevant terms of the first refusal agreement were clear and unambiguous and plainly allowed the Bradley Trust to develop Lot 1 with a family member or "affiliate."[2] That is exactly what the Bradley Trust did in the present case. The Bradley Trust developed Lot 1 with Frank Jr., who was the son of Frank Sr. and Josephine and was also the sole owner of Dunree. As the undisputed facts showed, the lot was transferred to Dunree for convenience purposes, at the bank's suggestion, to make it easier for defendants to obtain a construction loan for the development. There were no price or terms agreed upon between defendants for the transfer because the transfer was not a sale.[3] Plaintiff's assertions to the contrary, which in large part were founded upon the existence of a secret deal between defendants for the sale of the property, were not supported in any way by the record, were based solely upon speculation, and were not sufficient to defeat defendants' motion for summary judgment. See *Price v. Lunan Roberts, Inc.*,

---

[2]In general common usage, to affiliate with someone means "to bring or receive [that person or entity] into close connection as a member or branch." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/affiliate (last visited February 3, 2026). In a legal context, an affiliate is defined as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Black's Law Dictionary (12th ed. 2024). Although there is no indication that Frank Sr., Josephine, or the Bradley Trust had the ability to control Dunree from a legal standpoint, Dunree was certainly a related or closely-connected company, from a general standpoint, in that it was solely owned by Frank and Josephine's son, Frank Jr. We conclude, therefore, that Dunree was an affiliate of the Bradley Trust under the facts of the present case.

[3]Defendant's testimony was that any compensation to Frank and Josephine would be determined at the time the "spec" house sold. This is supported by the very nature of a "spec" house. The developer doesn't know if he/she will lose money, make money, and if there is a profit, what the profit will be until the eventual sale of the home. This supports Defendants' testimony that there was no "sale price" for the lot.

2023 IL App (1st) 220742, ¶ 25 (indicating that speculation is insufficient to defeat a motion for summary judgment). The trial court, therefore, correctly granted defendants' motion for summary judgment on plaintiff's contract-related claims and correctly denied plaintiff's cross-motion for partial summary judgment on those claims. Having so concluded, we need not address the parties' other arguments on this issue. We note, however, that the trial court's ruling on the contract-related claims was nothing more than the proper application of the law on summary judgment to the undisputed facts of the present case and, as such, does not give rise to any negative public policy concerns.

¶ 37                    B. Plaintiff's Implied Easement Claims (Section 2-615 Dismissal)

¶ 38        As his second point of contention on appeal, plaintiff argues that the trial court erred in granting defendants' section 2-615 motion to dismiss plaintiff's implied easement claims (counts I and II of the second amended complaint). As defendants correctly note, however, the last time that those claims were pled in full was in the second amended complaint. In addition, although plaintiff referred to those claims in his third amended complaint and noted that those claims had been stricken or dismissed (arguably preserving those claims for appellate review), plaintiff did not replead or refer to those claims in his fourth or fifth amended complaints. Under those circumstances, we must conclude that plaintiff's implied easement claims have been abandoned, withdrawn, forfeited, or waived. See *Bonhomme v. St. James*, 2012 IL 112393, ¶ 17 (indicating that a party who files an amended pleading, which is complete in itself and does not refer to or adopt the prior pleading, abandons and withdraws the prior pleading and waives any objection to the trial court's ruling on the prior pleading); *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153-54 (1983) (same). Therefore, we will not address the merits of plaintiff's arguments on this issue. Accordingly, we affirm the trial court's grant of defendants'

16

section 2-615 motion to dismiss plaintiff's implied easement claims as set forth in counts I and II of the second amended complaint.

¶ 39                                    III. CONCLUSION

¶ 40          For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 41          Affirmed.