Docket No. 84356–Agenda 37–May 1998.

RUDOLPH SILVA, Appellee, v. ELECTRICAL SYSTEMS, INC. (Midwest Conveyor Company, Inc., Appellant).

JUSTICE HARRISON delivered the opinion of the court:

Under section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)), an employer who is reimbursed for its workers' compensation payments out of the proceeds of the employee's action against a third party is required to pay the employee's attorney “25% of the gross amount of such reimbursement.” The issue in this appeal is how the fee award should be computed where the third party has brought a successful action against the employer under the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 
et seq.
 (West 1992)). The employer contends that its contribution liability should be deducted from the reimbursement amount and that it should be required to pay attorney fees only on the difference. Both the circuit court of Cook County and the appellate court rejected that contention, holding that the employer was not entitled to a credit for its contribution liability. We granted the employer's petition for leave to appeal (166 Ill. 2d R. 315) and now affirm.

The record before us shows that Rudolph Silva was employed as an iron worker by Midwest Conveyor Company, Inc. While working for Midwest Conveyor on a renovation project at a Ford Motor Company factory, Silva tripped and fell over some electrical conduit that was scattered across one of the aisles. The conduit was owned and maintained by Electrical Systems, Inc. (ESI), another contractor on the renovation project. At the time of his fall, Silva had a degenerative problem with his spine. The fall caused Silva's condition to become symptomatic and necessitated that he undergo a series of back surgeries. Silva received benefits from Midwest Conveyor in accordance with the Workers' Compensation Act (820 ILCS 305/1 
et seq.
 (West 1992)), to compensate him for his lost earnings and medical expenses. Silva also brought a common law negligence action against Ford and ESI to recover damages for his injuries.
(footnote: 1) Ford and ESI, in turn, asserted claims against Midwest Conveyor under the Contribution Act.

Silva settled his claims against Ford for $66,000. The matter subsequently proceeded to a jury trial on Silva's negligence claim against ESI and on ESI's claim for contribution against Midwest Conveyor. At the conclusion of the trial, the jury returned a verdict in favor of Silva. It found that Silva's total damages amounted to $472,710.26, but that his comparative fault was 19%, reducing his recoverable damages to $382,895.31. The court reduced this award by the amount paid by Ford in settlement (see 740 ILCS 100/2(c) (West 1992)), leaving a difference of $316,895.31.

With respect to ESI's contribution claim, the jury found in favor of ESI and against Midwest Conveyor. The jury apportioned fault between ESI and Midwest Conveyor based upon their relative culpability. Using the jury's findings, the circuit court determined that ESI was entitled to recover from Midwest Conveyor 32.09% of the $316,895.31 award owed to Silva. That figure was calculated to be $101,719.46.

Pursuant to section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)), Midwest Conveyor was entitled to reimbursement of its workers' compensation payments out of the proceeds of Silva's action against ESI. At the time of trial, Midwest Conveyor's workers' compensation payments totalled approximately $400,000. Because that amount exceeded the $316,895.31 award recovered by Silva, Midwest Conveyor was entitled to recoup the full amount of the award.

Midwest Conveyor's ability to recoup workers' compensation payments meant that the company was obligated by section 5(b) of the Workers' Compensation Act to pay a 
pro rata
 share of Silva's litigation expenses, plus attorney fees. The circuit court determined that Midwest Conveyor's share of the costs was $15,290.73 and that it owed attorney fees to Silva's counsel at section 5(b)'s statutory rate of 25% on the full amount of the $316,895.31 award. The court rejected the notion that Midwest Conveyor should be excused from paying attorney fees on $101,719.46 of the award, the amount Midwest had to pay ESI in contribution. The court further held that Silva's attorneys were entitled to receive 33⅓% of the $66,000 in settlement proceeds Silva received from its settlement with Ford. The 33⅓% rate was based on Silva's contingency fee contract with his attorneys.

Silva, Midwest Conveyor, and ESI all appealed. The appellate court affirmed all aspects of the circuit court's judgment except the award of attorney fees and costs. Nos. 1–95–1024, 1–95–1450, 1–95–1662 cons. (unpublished order under Supreme Court Rule 23). The court agreed that Midwest Conveyor was obligated to pay 25% of $316,895.31 as fees to Silva's lawyers under section 5(b) of the Workers' Compensation Act and was not entitled to a credit for its contribution liability. The court held, however, that Silva's counsel were not entitled to 33⅓% of the $66,000 in settlement proceeds Silva received from its settlement with Ford. In the appellate court's view, the settlement proceeds were subject to section 5(b)'s lower statutory rate of 25%. The appellate court further held that the settlement proceeds were subject to the cost reimbursement provisions of section 5(b). Because it could not tell whether the costs awarded by the circuit court included costs associated with the settlement, the appellate court remanded for the limited purpose of determining whether Silva's attorneys were entitled to an additional award of costs for their work in procuring the settlement.

We allowed Midwest Conveyor's petition for leave to appeal to consider the limited question of whether the circuit and appellate courts were correct in holding that the company was required to pay fees to Silva's attorneys under section 5(b) of the Workers' Compensation Act based on the full $316,895.31 award, unreduced by the amount the company was obliged to pay in contribution. No other aspects of the circuit and appellate courts' judgments are contested. The mandate as to the remainder of the case has already issued to the circuit court for proceedings on remand as directed by the appellate court and for enforcement of the remainder of the judgment.

The relationship between section 5(b)'s attorney fee provision and the Contribution Act was addressed by this court in 
Ramsey v. Morrison
, 175 Ill. 2d 218 (1997). In 
Ramsey
, the employer's contribution liability to the third party, as found by the jury, exceeded its liability under the Workers' Compensation Act. The amount of contribution the employer actually had to pay was reduced to a sum equal to the employer's workers' compensation liability. The reduction was necessary because, under 
Kotecki v. Cyclops Welding Corp.
, 146 Ill. 2d 155 (1991), an employer cannot be liable in contribution for more than the amount of its workers' compensation liability.

The question presented in 
Ramsey
 was whether the employer's contribution liability should be further reduced by the amount of fees and costs it was required to pay plaintiff's attorneys under section 5(b) of the Workers' Compensation Act. The employer argued that its payments for attorney fees and costs should be credited against the amount of contribution it owed because without such a credit, it would end up having to pay an amount equal to 125% of its workers' compensation liability. In the employer's view, such a result would violate
 Kotecki.

We rejected the employer's contention. We construed
 Kotecki
 to mean that an employer's liability for contribution should be limited only by the amount of workers' compensation benefits paid. In our view, an employer's liability for attorney fees and costs under section 5(b) is not a component of its workers' compensation liability. As we stated, an employer's liability for attorney fees and costs under section 5(b)

“is irrelevant to the determination of the employer's workers' compensation liability, and is therefore irrelevant to the determination of the employer's contribution liability.” 
Ramsey
, 175 Ill. 2d at 239.

Accordingly, we concluded that an employer is not entitled to a reduction of his contribution liability based on his section 5(b) share of attorney fees and costs.

Such a conclusion, we held, was the only one consistent with the language of section 5(b). Reducing the amount of contribution recoverable by the third party to reflect section 5(b) fees and costs would have the effect of shifting the obligation to pay such fees and costs from the employer to the third party. Under the statute, however, it is not the third party's responsibility to pay those fees and costs. That responsibility lies with the employer. 
Ramsey
, 175 Ill. 2d at 239.

We further held in 
Ramsey
 that reducing the amount of contribution by the employer's section 5(b) share of fees and costs would be inconsistent with the rationale behind the statute. Section 5(b) is premised on the assumption that an employer should share in the fees and costs associated with the employee's lawsuit because the litigation benefits the employer by providing a fund from which the employer can obtain reimbursement of its workers' compensation payments. For the third party there is no comparable benefit. There is no benefit at all. Accordingly, there is no justification for requiring it to shoulder part of the employee's litigation expenses. 
Ramsey
, 175 Ill. 2d at 239-40.

The employer in 
Ramsey 
argued, in the alternative, that if he had to pay contribution in an amount equal to 100% of the workers' compensation benefits, he should not be required to pay section 5(b) attorney fees and costs. What the employer claimed, in effect, was that his contribution liability should be deducted from the workers' compensation payments in determining the amount for which he was required to contribute attorney fees and costs under section 5(b).

Mindful of the effect such a ruling would have on the recovery by the employee and his attorney, and lacking argument on the employee's behalf, we declined to address the issue. 
Ramsey
, 175 Ill. 2d at 241. The present case differs somewhat from 
Ramsey
 in that the employer's contribution liability is less than the amount it can recover as reimbursement for its workers' compensation payments. Accordingly, the employer seeks only to have its responsibility for fees reduced, not eliminated completely. The principles involved, however, are the same. Here, as in 
Ramsey
, the employer argues that the amount it receives in reimbursement for its workers' compensation payments should be offset by its contribution liability in calculating its share of attorney fees under section 5(b).

The circumstances which caused us to defer consideration of the issue in 
Ramsey
 are not present in this case. The employee is a party to this appeal, and the issue has been fully briefed and argued by the employee as well as the employer. Accordingly, we shall address the issue on the merits.

The obligation of the employer to pay attorney fees is defined by the terms of section 5(b) of the Workers' Compensation Act. The portion of section 5(b) relevant to this appeal provides that where an employer is able to obtain reimbursement for the workers' compensation benefits it has paid, as Midwest Conveyor did here,

“and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement.” 820 ILCS 305/5(b) (West 1996).

In applying this statute to the facts of this case, both the circuit and appellate courts concluded that “the gross amount” of reimbursement recovered by Midwest Conveyor was $316,895.31. We agree. The Workers' Compensation Act does not define what constitutes “the gross amount” of reimbursement for purposes of section 5(b), so the phrase must be given its ordinary and popularly understood meaning. See 
People v. Sheehan
, 168 Ill. 2d 298, 306 (1995). When describing an amount, the term “gross” is generally understood to mean the overall total prior to any deductions or adjustments. Webster's Third New International Dictionary 1002 (1986). Here, the overall total reimbursed to Midwest Conveyor, prior to deductions and adjustments, was $316,895.31. Accordingly, the circuit and appellate courts were correct in using that figure to compute Midwest Conveyor's attorney fee liability under section 5(b).

The circuit and appellate courts properly rejected Midwest Conveyor's assertion this sum should be reduced by the company's $101,719.46 contribution liability. An employer's negligence has nothing to do with the employer's statutory right to recover full reimbursement for its workers' compensation payments to the employee. 
Carver v. Grossman
, 55 Ill. 2d 507, 516 (1973). Correspondingly, Midwest Conveyor's payments under the Contribution Act were independent of its reimbursement under the Workers' Compensation Act. The $101,719.46 was not a credit against either ESI's payments to Silva or Silva's reimbursement to Midwest Conveyor. ESI had to pay Silva the $316,895.31 Silva had won in its tort action, and Silva, in turn, was required to pay Midwest Conveyor the $316,895.31 as reimbursement for the workers' compensation payments. It was then up to ESI to enforce the $101,719.46 contribution judgment against Midwest Conveyer. There is nothing in the language of section 5(b) that would authorize a reduction of the reimbursement amount by that sum, and we have no authority to depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. 
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc
., 158 Ill. 2d 76, 83 (1994).

Midwest Conveyor's assertion must also fail because it is inconsistent with the purpose of the statute. As we have already indicated, the principle behind the fee provision in section 5(b) is that employers should pay their fair share of the cost of their employees' tort recoveries against third parties because those recoveries benefit the employers by enabling them to receive reimbursement for their workers' compensation payments. 
Reno v. Maryland Casualty Co.
, 27 Ill. 2d 245, 247 (1962). In this case Midwest Conveyor benefitted by the full amount of the $316,895.31 award recovered by Silva's attorneys in the tort action against ESI. That is so because Midwest Conveyor was able to obtain the full amount of that award as reimbursement for the workers' compensation payments it had made.

Although Midwest Conveyor did have to pay ESI $101,719.46 in contribution, the company's liability to ESI does not alter the fact that the litigation brought by Silva's attorneys enabled Midwest Conveyor to obtain reimbursement of a substantial portion of it workers' compensation payments. Silva's attorneys succeeded in procuring a $316,895.31 judgment, and Midwest Conveyor was the sole beneficiary of their efforts. Because the award was less than the workers' compensation payments Midwest Conveyor had made, Midwest Conveyor was entitled to recoup the entire amount. No one else, including Silva himself, gained any advantage from it.

To hold that the benefits received by Midwest Conveyor were offset by its contribution liability would be flatly inconsistent with our recent decision in 
Ramsey
. In 
Ramsey
 we held that the employer benefitted from the employee's action against the third party even though the employer had to pay contribution to the third party in an amount equal to 100% of the employer's workers' compensation liability. 
Ramsey
, 175 Ill. 2d at 239-40. If an employer benefits where the full amount of the reimbursement must be paid over in contribution, there can be no less of a benefit where, as here, the employer's contribution liability was less than a third of the amount it was able to obtain in reimbursement for its workers' compensation payments.

The benefits received by Midwest Conveyor were due to the efforts of Silva's attorneys. Those attorneys are entitled to be fully compensated for their efforts in accordance with section 5(b). If Midwest Conveyor's position were accepted, that would not happen. After managing to procure an award of $316,895.31, Silva's attorneys would receive fees on only $215,175.86. For no reason other than that Midwest Conveyor was found to be contributorily negligent, Silva's attorneys would get nothing for their work in securing the balance of $101,719.46.
(footnote: 2) In effect, the attorneys would be forced to subsidize Midwest Conveyor's lack of due care. Applied in other cases, such a rule would mean that the more culpable the employer was, and the greater its corresponding contribution liability, the less the employer would have to pay in section 5(b) attorney fees and costs. There is nothing in the language or purpose of the Workers' Compensation Act that could justify such an anomalous result. Just as an employer's negligence has nothing to do with its statutory right to recovery workers' compensation payments under section 5(b), an employers' negligence may not be invoked to diminish or escape its statutory obligation to pay attorney fees. See 
Dukes v. J.I. Case Co.
, 186 Ill. App. 3d 439, 446 (1989).

For the foregoing reasons, we affirm the judgment of the appellate court upholding the award of section 5(b) fees to Silva's attorneys based on the $316,895.31 recovery they obtained, without reduction for the amount Midwest Conveyor was obliged to pay in contribution.

Affirmed.

FOOTNOTES
1:     
Silva named two additional defendants in his complaint, but dismissed his claims against them prior to trial. Silva also asserted claims under the Structural Work Act (Ill. Rev. Stat. 1991, ch. 48, par. 59.90 
et seq.
, repealed by Pub. Act 89–2, eff. February 14, 1995). The circuit court, however, entered summary judgment against Silva on those claims, and the propriety of that action has not been challenged.

2:     
The attorneys could not look to Silva for payment, because  none of the money, including the $101,719.46, benefitted him.  As noted in our opinion, the full amount of the award went to Midwest Conveyor as reimbursement for its workers' compensation payments. Silva collected nothing.