AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. FISHER DEVELOPMENT, INC., Defendant-Appellant (The Gap, Inc., d/b/a Old Navy, Defendant).

First District (1st Division)   No. 1—08—1214

Opinion filed May 18, 2009.—Rehearing denied June 17, 2009.

Kevin J. Kuhn and Michael J. Flynn, both of Vedder Price, P.C., of Chicago, for appellant.

Patti M. Deuel, of Kiesler & Berman, of Chicago, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

This appeal arises from an insurance coverage dispute between the general contractor, Fisher Development, Inc. (FDI), as an additional insured, and American Family Mutual Insurance Company, the issuer of a commercial general liability policy to a subcontractor. Following cross-motions for summary judgment in a declaratory action, the circuit court granted summary judgment to American Family, finding it had no duty to defend FDI against two underlying actions brought by The Gap, Inc. (hereinafter, the Gap), the property owner of the construction sites. FDI contends that summary judgment should have been granted in its favor. Premised on its success on the duty-to-defend issue, FDI also contends American Family's refusal to defend FDI against the Gap actions was vexatious and unreasonable under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2006)), entitling it to additional damages. We affirm the circuit court's grant of summary judgment in favor of American Family.

## BACKGROUND

On January 1, 1992, FDI and the Gap entered into a construction contract in which FDI agreed to provide labor and materials for improvements at certain Gap stores. The Gap-FDI contract contained the following clauses.

"17. Insurance

A. FDI's Obligations. FDI agrees to maintain in effect at all times during the rendering of services all the insurance below ***:

(i) Commercial general liability insurance with a combined single limit of at least Twenty Million Dollars ($20,000,000), including, but not limited to, the following coverages: *** personal injury ***. All commercial general liability insurance (a) shall include FDI's employees as additional insured, and (b) all endorsements to such policies shall apply to personal injury ***.

(ii) Statutory workers' compensation and employer's liability insurance with limits of at least Five Million Dollars ***.

18. Indemnification.

FDI agrees to indemnify and hold harmless The Gap, its officers, employees and agents, from and against any and all liability, loss and expense (including reasonable attorneys' fees) resulting from (i) personal injury, sickness or disease, including death at any time resulting therefrom (hereinafter 'personal injury'), and (ii) damage

to or destruction of property, including the loss of use thereof (hereinafter 'damage to property'), arising in whole or in part by reason of, or in any way resulting from, the performance of the Work, whether by FDI or by any subcontractor, or anyone directly or indirectly employed by either of them (other than FDI, all hereinafter 'FDI subcontractors')."

FDI subcontracted with Shanahan Drywall Service, Inc., to perform a portion of the improvements at the Gap stores. In connection with the subcontract, Shanahan purchased a commercial general liability (CGL) policy from American Family. The CGL policy covered the period of August 2, 2000, to August 21, 2001, and named FDI as an additional insured with respect to liability "arising out of [Shanahan's] ongoing operations provided for [FDI]." In the section entitled "COVERAGES," the CGL policy states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." The CGL policy also contains a clause excluding coverage for liability for bodily injury "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The CGL policy set out an exception to this exclusion provision for "liability for damages[ ] [t]hat the insured would have in the absence of the contract or agreement."

During the coverage period, Suzanne Vanderhyden and Cynthia Cash, employees of the Gap, were injured at the Gap stores where Shanahan was working. Vanderhyden and Cash filed workers' compensation claims against the Gap. Vanderhyden and Cash also filed negligence actions against FDI and Shanahan. Both alleged their injuries arose out of Shanahan's subcontracting work for FDI. American Family accepted FDI's tender and defended FDI in these actions brought by the Gap employees. In each action, FDI filed a third-party action against the Gap seeking contribution.

On May 25, 2006, the Gap filed an independent suit against FDI. In count I of its complaint, the Gap alleged FDI was obligated to indemnify it for the workers' compensation awards to Vanderhyden and Cash. The Gap claimed it paid $268,626.39 to Vanderhyden and $66,893.59 to Cash in worker's compensation. Count II alleged FDI breached its construction agreement by failing to obtain an insurance policy that would provide coverage to the Gap for the actions filed by Vanderhyden and Cash. The Gap alleged that because it had been joined as a third-party defendant in the Vanderhyden and Cash negligence actions against FDI and Shanahan, FDI must reimburse the Gap for its litigation expenses and any liability it might incur in the third-party actions.

FDI tendered its defense in the Gap suit to American Family. American Family refused the tender, answering that the CGL policy did not cover the Gap claims. FDI retained counsel at its own expense and successfully moved to dismiss the Gap suit as untimely based on the statute of limitations. The Gap did not appeal the dismissal of its suit; instead, it filed a counterclaim to the third-party contribution action alleging the same claims filed by FDI against the Gap in Vanderhyden's negligence action against FDI and Shanahan. FDI successfully moved to dismiss the Gap's counterclaim.

Thereafter, American Family filed an amended complaint for declaratory judgment that it had no duty to defend FDI in the actions brought by the Gap and, thus, no duty to reimburse FDI for its litigation expenses in defending against the Gap suits. FDI filed its own declaratory action to force American Family to reimburse it for its defense of the Gap actions. FDI also alleged breach of contract and a violation of section 155 of the Illinois Insurance Code. American Family and FDI filed cross-motions for summary judgment.

On April 4, 2008, the circuit court granted American Family's motion for summary judgment, finding American Family had no duty to defend FDI in the Gap suit and counterclaim.

FDI appeals, requesting five forms of relief: (1) reversal of the April 4, 2008, judgment of the trial court; (2) entry of judgment in its favor based on American Family's duty to defend against the underlying actions brought by the Gap; (3) entry of judgment in its favor for American Family's vexatious and unreasonable refusal to defend, which violated section 155 of the Insurance Code; (4) entry of judgment in its favor for attorney fees and costs incurred in the present action, plus a $60,000 statutory penalty under section 155 of the Insurance Code; and (5) a remand to the trial court to determine the defense costs incurred by FDI in the underlying claims and the attorney fees and costs incurred by FDI in the present action, with instructions to the trial court to enter judgment in favor of FDI in such amounts, plus the statutory penalty.

## ANALYSIS

FDI makes a three-prong attack on the circuit court's judgment: (1) it contends that based on the damages sought by the Gap in its suit and counterclaim, the facts alleged in the complaints potentially fell within the coverage of the CGL policy; (2) the exclusion provision of the CGL policy for assumption of liability in a contract or agreement does not apply; and (3) if the exclusion provision applies, the first exception to the contractual liability exclusion applies as well.

American Family responds that the exclusion provision precludes coverage and, therefore, it had no duty to defend FDI in the Gap lawsuits.

## Standard of Review

The same standard for the grant of summary judgment applies in a case involving a duty to defend claim: "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556, 866 N.E.2d 149 (2007). Where cross-motions for summary judgment are filed in an insurance coverage case, the parties acknowledge that no material questions of fact exist and only the issue of law regarding the construction of an insurance policy is present. *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 338-39, 842 N.E.2d 170 (2005). Our review is *de novo. Virginia Surety Co.*, 224 Ill. 2d at 556.

In construing an insurance policy, a court looks to the policy as a whole, the risk undertaken, the subject matter and the purpose of the contract. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204 (1992). "If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning.* [Citation.] However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy [citation]." (Emphasis in original.) *Outboard Marine Corp.*, 154 Ill. 2d at 108.

To determine whether an insurer has a duty to defend an action against the insured, we compare the allegations of the underlying complaint to the relevant portions of the insurance policy. *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 438, 641 N.E.2d 395 (1994). If the complaint alleges facts that fall within or potentially within the coverage of the policy, "the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent." *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). Where the insurer relies on a provision that it contends excludes coverage to reject a tender of defense, we review the applicability of the provision to ensure it is " 'clear and free from doubt' that the policy's exclusion prevents coverage." *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 560, 734 N.E.2d 50 (2000), quoting *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 564, 571 N.E.2d 256 (1991).

## Exclusion for Assumption of Liability

Because this case turns on whether the exclusion provision of the American Family CGL policy applies, we begin with our review of that provision.

FDI broadly contends that clause 18, titled "Indemnification," of the Gap-FDI contract does not trigger the application of the American Family exclusion provision because FDI did not assume any additional liability through the indemnification clause not already imposed by Illinois law. In FDI's own words, "the 'indemnification' clause in the Gap-Fisher Contract was nothing more than an agreement by Fisher to remain liable in contribution for its *pro rata* share of the common liability for Vanderhyden's and Cash's bodily injuries." FDI invokes, as support, the conclusion reached in *Virginia Surety* that, under Illinois law, the *pro rata* share of the common liability of the general contractor and the subcontractor/employer of the injured party does not shift between the parties even in the face of a hold harmless agreement given by the subcontractor in favor of the general contractor.

American Family, in turn, grounds its claim that the exclusion provision applies on the express language of clause 18: "FDI agrees to indemnify and hold harmless The Gap *** against any and all liability *** resulting from (i) personal injury *** arising in whole or in part *** from the performance of the Work, whether by FDI or any subcontractor."

In *Virginia Surety Co.*, the supreme court resolved "the split in the appellate districts" on what constitutes an " 'insured contract.' " *Virginia Surety Co.*, 224 Ill. 2d at 555. An insured contract was defined as " '[t]hat part of any other contract or agreement pertaining to your business *** under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.' " *Virginia Surety Co.*, 224 Ill. 2d at 553. The language in the American Family exclusion provision differs but the parties agree that the exclusion provision precludes coverage for the same contract assumption of liability not otherwise imposed by law. The American Family CGL policy excludes coverage for liability "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

Based on its reading of *Virginia Surety*, FDI's argument is as follows. The holding in *Virginia Surety* means that both the Gap and FDI remain liable for their respective *pro rata* shares of the common liability for the negligence claims by the Gap employees under the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 2000)).

The Construction Contract Indemnification for Negligence Act (740 ILCS 35/0.01 *et seq.* (West 2000)) (Anti-Indemnification Act) prohibits the Gap in the construction contract from shifting responsibility for its own negligence to FDI. It follows that under the indemnification clause of the Gap-FDI construction contract, FDI does not assume any more liability than what Illinois law imposes through the Contribution Act.

While we have no dispute with the individual propositions asserted by FDI, in the context of this case, we reject FDI's overall contention that the indemnification clause in the Gap-FDI contract imposed no greater liability on FDI than what Illinois law imposes. Nor do we find any support for FDI's claim in the holding in *Virginia Surety*.

In *Virginia Surety*, the case pitted the subcontractor's workers' compensation carrier, Virginia Surety, against its CGL carrier, Northern Insurance. An employee of the subcontractor was injured; he filed suit against the general contractor, who in turn filed a third-party action against the subcontractor. The subcontractor tendered its defense to each carrier: Virginia Surety accepted; Northern Insurance rejected. Cross-complaints for declaratory judgment were filed. The circuit court found no duty to defend on the part of Northern Insurance; the appellate court affirmed; the supreme court granted leave to appeal.

Before the supreme court, the dispute centered on the significance of the "insured contract" provision. The general contractor and the subcontractor had entered into an agreement whereby the subcontractor waived any right of contribution against the general contractor, among others (waiver agreement). *Virginia Surety Co.*, 224 Ill. 2d at 553. The CGL policy issued by Northern Insurance contained the standard bar to coverage for personal injury suffered by an employee of its principal insured, the subcontractor. The question before the supreme court was whether the waiver agreement between the general contractor and the subcontractor constituted an "insured contract" as provided by the CGL policy issued by Northern Insurance. That is, whether the " 'liability assumed by the insured,' " the subcontractor, in the waiver agreement with the general contractor " 'would be imposed by law [even] in the absence of [the waiver agreement].' " *Virginia Surety Co.*, 224 Ill. 2d at 553. The parties do not dispute that this "imposed by law" exception to the exclusion from coverage under the CGL policy issued by Northern Insurance is identical to the American Family CGL policy exception that it will pay for "liability for damages *** [t]hat the insured would have in the absence of the contract or agreement."

In *Virginia Surety*, the lower courts found the CGL carrier, Northern Insurance, did not assume the risk to provide coverage for the liability accepted by the subcontractor in the waiver agreement with the general contractor in which it gave up its right to protect itself from a contribution claim from the general contractor, in the event one of the subcontractor's employees was injured at the jobsite, as turned out to be the case. In this regard, the supreme court noted that absent a waiver agreement between the general contractor and the subcontractor, as the employer of the injured worker, the maximum liability in a third-party suit for contribution is limited to the subcontractor's liability to its employee under the Workers' Compensation Act (820 ILCS 305/5(a) (West 2006)) as the court held in *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 164-65, 585 N.E.2d 1023 (1991). *Virginia Surety Co.*, 224 Ill. 2d at 568. But, of course, the subcontractor as "employer may waive its *Kotecki* protection by contract and thereby be liable for its full *pro rata* share of contribution." *Virginia Surety Co.*, 224 Ill. 2d at 558. The question raised by the dispute between the workers' compensation carrier and the carrier of the CGL was whether the portion of the subcontractor's "liability above the *Kotecki* cap" was imposed by law on the subcontractor or on the general contractor. *Virginia Surety Co.*, 224 Ill. 2d at 566.

If, by operation of law, the liability addressed by the waiver agreement fell upon the general contractor then the waiver agreement might involve a shift of "tort liability," defined as that liability imposed by law, from the general contractor to the subcontractor so that a duty to defend on the part of the CGL carrier might be triggered by way of the "insured contract" exception. If, however, the liability addressed by the waiver agreement fell upon the subcontractor by operation of law, then no "shift of liability" by force of law occurred and the CGL carrier would have no duty to defend because the subcontractor, absent the waiver agreement, would have been protected by the *Kotecki* cap against accepting its full *pro rata* share of common liability. In effect, by virtue of the waiver agreement, the subcontractor was assuming liability it would otherwise not have been forced to assume.

Sorting through the interplay of the Workers' Compensation Act, the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 2000)), the principles of joint and several liability, and the Anti-Indemnification Act, the supreme court concluded that the "portion of the common liability above the *Kotecki* cap is not 'imposed by law' upon [the general contractor], but remains with [the subcontractor]." *Virginia Surety Co.*, 224 Ill. 2d at 568. Consequently, the waiver agreement was not an insured contract; the exception to the exclusion provision was not met and no duty to defend was triggered on the part

of Northern Insurance, the CGL policy insurer. *Virginia Surety Co.*, 224 Ill. 2d at 570.

*Virginia Surety* makes clear certain propositions. Under Illinois law, because the *Kotecki* cap is available to a subcontractor in a third-party action by a general contractor, the subcontractor's CGL carrier, exercising its duty to defend, would have the right to assert this maximum liability affirmative defense on behalf of its principal insured. If, however, the subcontractor gives up its affirmative defense under the Workers' Compensation Act in a waiver agreement with the general contractor, then the subcontractor faces financial responsibility above the *Kotecki* cap. In the absence of an exclusion provision for this contract assumption of liability by its primary insured, the CGL carrier would face liability exposure for the subcontractor's full *pro rata* share of the common liability for the injury to its employee in a contribution action by the general contractor. See *West Bend Mutual Insurance Co. v. Mulligan Masonry Co.*, 337 Ill. App. 3d 698, 706, 786 N.E.2d 1078 (2003) (if the employer "has waived its *Kotecki* cap, then it has assumed tort liability that otherwise would have been imposed against [the general contractor]"), *overruled by Virginia Surety*, 224 Ill. 2d at 570.

Not unexpectedly, CGL carriers, recognizing that such assumption of liability agreements between its principal insured, a subcontractor, and a general contractor became common place, expressly excluded coverage for that additional liability taken on by subcontractors, at least without the CGL carrier's express acceptance of the insured's undertaking of such liability, for which it would presumably demand an additional premium. In other words, if the principal insured, the subcontractor, waived its maximum liability under the *Kotecki* cap, unbeknownst to the CGL carrier, by virtue of a waiver agreement or contract, the exclusion provision would apply so that no duty to defend would arise on the part of the CGL carrier because the waiver agreement increased its risk of coverage beyond what the law imposed.

While the supreme court's analysis in *Virginia Surety* was based on the indivisible nature of joint and several liability and the retention of the subcontractor's and general contractor's *pro rata* share of common liability for the plaintiff's injury in the construction negligence suit under the Contribution Act, the ultimate conclusion was consistent with the widespread reality of the existence of waiver agreements of the *Kotecki* cap by subcontractors as the principal insured in the CGL policy in favor of general contractors. The holding in *Virginia Surety* also upheld the CGL carrier's response to such waiver agreements to exclude assumption of liability by contract or agreement that would otherwise increase the coverage it provided to its principal

insured, the subcontractor. In other words, because the "force of law" exception to the standard exclusion provision for liability did not apply, the exclusion provision was given full force and effect.

In the case at bar, FDI invokes the conclusion reached in *Virginia Surety* that under Illinois law the *pro rata* share of the common liability does not shift between the general contractor and the employer of the injured party, to argue that the "indemnification" agreement between the Gap and FDI added no more liability to FDI than that which the law already imposed in the absence of the indemnification agreement. Therefore, FDI argues, the assumed liability exclusion in the CGL policy issued by American Family does not apply. If the exclusion provision of the American Family CGL policy does not apply, then, of course, American Family had a duty to defend FDI in the suits by the Gap.

While we doubt much of what our supreme court stated in *Virginia Surety* has any application to the circumstances in this case, where the dispute is between a general contractor as an "additional insured" and the property owner as the employer of the injured parties, upholding the application of the American Family exclusive provision to the Gap-FDI contract is relatively straightforward. The fundamental fault in FDI's argument is its failure to acknowledge that the CGL carrier in *Virginia Surety* was found to have no duty to defend its principal insured, the subcontractor, in light of the waiver agreement it entered into with the general contractor. In effect, the waiver agreement entered into by the principal insured (the subcontractor) and the additional insured (the general contractor) constituted an assumption of liability by agreement or contract excluded by the Northern Insurance CGL policy. The supreme court spent few words on its examination of the waiver agreement. At no point did the supreme court ever suggest that the waiver agreement in *Virginia Surety* could somehow be rendered meaningless as nothing more than the consequence imposed under Illinois law, a result which FDI claims we must reach as to the indemnification clause here.

The indemnification clause at issue here is no different than the waiver agreement central to the dispute between the carriers in *Virginia Surety*. Here, FDI offers in defense no more than a repetition of the proposition of Illinois law established in *Virginia Surety* that the *pro rata* share of the common liability remains with each party liable. The question before us, however, is whether FDI assumed additional liability by the indemnification clause. We conclude FDI did.

By virtue of the indemnification clause, FDI agreed to hold the Gap harmless "against any and all liability *** resulting from (i) personal injury *** arising in whole or in part *** from the perfor-

mance of the Work, whether by FDI or any subcontractor." We fail to see how the supreme court's decision in *Virginia Surety* somehow rendered this express agreement meaningless. On the contrary, the facts in *Virginia Surety* run counter to FDI's claim before us. FDI is in no better position to invoke duty-to-defend coverage under the CGL policy issued by American Family against the Gap litigation than Virginia Surety was in arguing that the subcontractor assumed no additional liability under its waiver agreement with the general contractor, which if accepted, might well have given rise to a duty to defend on the part of the CGL carrier, Northern Insurance. Ultimately, of course, the waiver agreement in *Virginia Surety* was held to be a contract assumption of liability. The simple rebuttal to FDI's claim that the indemnification agreement between the Gap and FDI has no legal meaning is that the holding in *Virginia Surety* provides no support for this claim. Nor does FDI offer any other authority to support its position.

If anything, *Virginia Surety* may be read as standing for the proposition that Illinois law does nothing to preclude a party from assuming additional liability through an agreement or contract. In *Virginia Surety*, the supreme court held that the assumption of liability by the primary insured in favor of the general contractor did not trigger a duty to defend by the CGL insurer of the subcontractor based on an exclusion provision similar to the one at issue here.

In the case at bar, FDI agreed to hold the Gap harmless in the indemnification clause of the Gap-FDI contract. The assumption of liability by FDI went beyond merely accepting its *pro rata* share of common liability. Just as the supreme court found that under the waiver agreement between the subcontractor and the general contractor, the subcontractor assumed liability above the *Kotecki* cap, triggering the exclusion provision of the CGL policy in *Virginia Surety*, so too here, FDI assumed additional liability based on the indemnification clause in the Gap-FDI contract, triggering the exclusion provision under the American Family CGL policy it issued to Shanahan. FDI is entitled to no greater coverage than the primary insured where FDI assumed additional liability through the indemnification clause with the Gap, as property owner. We find nothing in Illinois law that renders that indemnification clause meaningless.[1]

---

[1]There is no suggestion by FDI that the indemnification clause, which makes no reference to indemnifying the Gap for its own negligence, runs afoul of the Anti-Indemnification Act. Compare *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 310 n.1, 882 N.E.2d 525 (2008) ("barring a statutory

We conclude that the application of the American Family CGL policy's exclusion provision to the Gap suits is clear and free from doubt as FDI assumed additional liability through the indemnification clause of the Gap-FDI contract.

## Exception to Exclusion

FDI's fallback position that "the exception to the contractual liability exclusion applied because Fisher's potential liability arose independently of the Gap-Fisher contract" is equally without merit.

The Gap's claim against FDI is not founded on any tort liability that might be placed at FDI's feet for the work done by Shanahan. The Gap's claim is that it bargained with FDI for insurance protection against any loss and expense it might incur based on the work by FDI and its subcontractor Shanahan at the Gap stores. As such, the claim is based on a contractual obligation, not on any liability that might be imposed by operation of law.

The aim of the Gap's suits was not to impose upon FDI liability for its *pro rata* share of the common liability for sums and expenses incurred by the Gap for Vanderhyden's and Cash's injuries. The Gap sought to be made whole by enforcing the indemnification agreement with FDI to protect the Gap in the event of such claims arising from the construction work. The agreement between FDI and the Gap was to hold the Gap harmless from any personal injury, "arising in whole or in part *** from the performance of the work *** by FDI or by any subcontractor." Even if the subcontractor were wholly responsible for the personal injuries suffered by Vanderhyden and Cash, as may well be the case, leaving FDI with little or zero *pro rata* share of the common liability, the Gap bargained to have FDI protect the Gap from incurring *any* loss and expense from such injuries and FDI agreed to that bargain.

Because we conclude that the application of the American Family CGL policy's exclusion provision to the Gap suits to be clear and free from doubt as the indemnification clause expanded the coverage beyond what the law imposes, we reject FDI's claim that the exception to the exclusion provision applies. We address only briefly FDI's remaining contentions.

## Ambiguity of the CGL Policy

While not raised expressly in the Issues portion of its main brief, FDI argues the contractual liability exclusion and the first exception are ambiguous. We find no merit to this argument. Illinois courts have

provision to the contrary, contracts that clearly and explicitly provide indemnity against one's own negligence are valid and enforceable").

held the language of this exclusion to be free from ambiguity. See *Willett Truck Leasing Co. v. Liberty Mutual Insurance Co.*, 88 Ill. App. 3d 133, 138, 410 N.E.2d 376 (1980) ("we find no ambiguity in the language of the exclusion"). Nor do we find any ambiguity in the first exception to the exclusion to aid FDI's claim that the first exception applies here.

## Attorney Fees and Costs

Where the policy does not apply, there can be no finding that the insurer acted vexatiously and unreasonably. *Westchester Fire Insurance Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 638, 747 N.E.2d 955 (2001).

## CONCLUSION

We affirm the judgment of the circuit court of Cook County granting summary judgment in favor of American Family. It is clear and free from doubt that American Family had no duty to defend FDI with respect to the underlying actions brought by the Gap. Because American Family had no duty to defend, there is no breach of contract and American Family is not liable to pay defense costs incurred by FDI in this action or the underlying actions.

Affirmed.

R. GORDON, P.J., and WOLFSON, J., concur.