2018 IL App (1st) 171292
No. 1-17-1292

FIRST DIVISION
June 11, 2018

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| TIMOTHY COOLEY, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POWER CONSTRUCTION COMPANY, LLC, | ) | |
| | ) | No. 15 L 8626 |
| Defendant and Third-Party | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| (Reflection Window Company LLC, d/b/a | ) | |
| Reflection Window and Wall, LLC, Third-Party | ) | Honorable John H. Ehrlich |
| Defendant-Appellant). | ) | Judge Presiding. |

JUSTICE GRIFFIN delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    The trial court found that third-party defendant Reflection Window Company LLC

(Reflection Window) as an employer waived its affirmative defense to limit its liability for an

injury sustained by its employee. The trial court also found that Reflection Window waived its

statutory workers' compensation lien. We hold that Reflection Window waived its limited liability

status but not its lien rights. Accordingly, we affirm in part and reverse in part.

¶ 2                                    BACKGROUND

¶ 3      Plaintiff Timothy Cooley was working as an employee of third-party defendant Reflection Window on a construction project in Chicago. Plaintiff was injured when he was unloading a 600-pound window that Reflection Window was going to install at the project. He filed a workers' compensation claim and received benefits as a result.

¶ 4      Plaintiff also filed this case against defendant Power Construction Company, LLC (Power Construction), for negligence. Power Construction was the general contractor for the project. Power Construction had retained Elston Window and Wall, LLC (Elston Window), as a subcontractor, and Elston Window retained Reflection Window as a sub-subcontractor.

¶ 5      Power Construction filed a third-party complaint for contribution against Reflection Window. Power Construction asserted that Reflection Window was the negligent party. Appended to the third-party complaint are copies of the master agreement between Power Construction and its subcontractor Elston Window and also the sub-subcontract agreement between Elston Window and Reflection Window.

¶ 6      Reflection Window filed an answer and affirmative defenses to the third-party complaint brought against it by Power Construction. Reflection Window denied any liability, and it also asserted the "*Kotecki* cap" as an affirmative defense. The *Kotecki* cap is derived from the Illinois Supreme Court decision *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991), in which the court held that an employer's liability for its employee's injury is capped at an amount not greater than the employer's workers' compensation liability to its employee.

¶ 7      Power Construction responded with a motion to strike the *Kotecki* cap affirmative defense on the basis that Reflection Window had waived that defense under either the master agreement,

the subcontract agreement, or both. Both the master agreement and subcontract agreement have indemnification provisions. More relevant here is the subcontract indemnification provision in which Reflection Window agrees to indemnify both Elston Window and Power Construction and which mentions workers' compensation.

"[Reflection Window] agrees to defend and indemnify [Elston Window], [Power Construction] *** and such other parties as [Elston Window] is required by the Contract Documents to defend and indemnify, from and against any and all claims *** which are caused by the negligence of [Elston Window], [Power Construction] ***. [Reflection Window] hereby expressly and specifically agrees that its obligations to indemnify, defend and save harmless shall not in any way be diminished by any statutory or constitutional immunity it enjoys from suits by its own employees or from limitations of liability or recovery under worker's compensation laws."

¶ 8        The trial court granted Power Construction's motion to strike Reflection Window's *Kotecki* cap affirmative defense under that indemnity provision in the contract. However, and this is the genesis of the issue on appeal, the trial court also included a statement in its order that, under the agreement, Reflection Window "explicitly waived [its] workers' compensation lien." That statement is the only one in the nine-page order that discusses a waiver of the workers' compensation *lien*. Power Construction did not move to strike the lien, nor did it otherwise address the lien in its motion to strike. Power Construction only moved the court for an order that Reflection Window's cap on the amount of the liability be found to be waived.

¶ 9        Reflection Window filed a motion to reconsider based on its belief that the court's

reference to a lien waiver must have been a mistake, as it is not addressed in the rest of the order and no one asked the court for such a ruling. Reflection Window asked that the court modify its order by removing the language regarding a "lien waiver." The court did not order any additional briefing on the motion to reconsider and denied Reflection Window's motion "in its entirety," noting that the court's prior order "stands as written." Reflection Window appeals.

¶ 10                                    ANALYSIS

¶ 11    On appeal, Reflection Window does not challenge the trial court's ruling on the issue framed by Power Construction's motion to strike—whether the affirmative defense under *Kotecki* was waived. Instead, the parties agree that the only issue presented on appeal is whether Reflection Window waived its workers' compensation *lien* as it relates to plaintiff's personal injury lawsuit.

¶ 12    Employees that are injured at work do not have a cause of action against their employer, and their exclusive remedy is to apply for benefits under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2016)). *Moran v. Gust K. Newberg/Dugan & Meyers*, 268 Ill. App. 3d 999, 1006 (1994). However, an injured employee may have a cause of action against a third party to the employment relationship whose negligence allegedly caused or contributed to the employee's injuries, such as a general contractor. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 557 (2007). In such a case, the Workers' Compensation Act does not limit the employee's recovery from that third-party tortfeasor. *Id.*; 820 ILCS 305/5(b) (West 2016).

¶ 13    In turn, although the employee himself is barred from bringing suit directly against his employer, the third-party nonemployer may file suit against the employer for contribution. *Virginia Surety Co.*, 224 Ill. 2d at 557. The concept of contribution contemplates that each party

whose fault contributed to an injury should pay its *pro rata* share of the common liability. *McMackin v. Weberpal Roofing, Inc.*, 2011 IL App (2d) 100461, ¶ 24. The Illinois Supreme Court has held, however, that an employer's contribution liability for its employee's injury is capped at an amount not greater than the employer's workers' compensation liability to its employee. *Kotecki*, 146 Ill. 2d at 166. So if a subcontractor's employee sues a general contractor for his injuries, the "*Kotecki* cap" can be used as an affirmative defense to the general contractor's contribution claim against a subcontractor. *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 529 (2009).

¶ 14    The *Kotecki* cap can be waived by the employer. *Estate of Willis v. Kiferbaum Construction Corp.*, 357 Ill. App. 3d 1002, 1006 (2005). A subcontractor's agreement to indemnify the general contractor and hold it harmless for claims resulting from the performance of the subcontractor's work waives the affirmative defense that the subcontractor might have otherwise had for limited liability under the Workers' Compensation Act. *Virginia Surety Co.*, 224 Ill. 2d at 567. Thus, such an agreement makes the subcontractor liable for unlimited contribution, undiminished by the *Kotecki* cap. *Id.*; see also *American Family*, 391 Ill. App. 3d at 529.

¶ 15    An employer is entitled to a workers' compensation lien on any recovery that its injured employee might get from a third party that caused or contributed to the injury. See 820 ILCS 305/5(b) (West 2016). A workers' compensation lien is statutorily imposed by section 5(b) of the Workers' Compensation Act. *Corley v. James McHugh Construction Co.*, 266 Ill. App. 3d 618, 619 (1994). A workers' compensation lien serves the important purpose of allowing both the employer and the injured employee an opportunity to reach the true offender while preventing the employee from obtaining a double recovery. *Gallagher v. Lenart*, 226 Ill. 2d 208, 238-39 (2007).

¶ 16     In this case, Reflection Window does not argue that the trial court erred when it struck its *Kotecki* affirmative defense. Reflection Window does, however, argue that the trial court erred when it held that its workers' compensation lien had been waived. It is unclear if the trial court simply considered the waiver of the *Kotecki* limitation on liability to also constitute a waiver of the workers' compensation lien or whether the court found some other basis for holding that the lien is waived. Accordingly, we will analyze both potential bases for the ruling.

¶ 17     The lien and the limited liability under *Kotecki* are separate concepts. "[A]n employer's negligence has nothing to do with its statutory right to recover workers' compensation payments under section 5(b) ***." *Silva v. Electrical Systems Inc.*, 183 Ill. 2d 356, 366 (1998). There is a distinction between a cap on liability and the right to recompense granted to employers in the Workers' Compensation Act. Reflection Window can have both agreed to be subject to potential unlimited liability while at the same time not given up its right to collect monies it paid for workers' compensation for *Power Construction causing* an injury to its employee.

¶ 18     We are yet to discover the identity of the "true offender." See *Gallagher*, 226 Ill. 2d at 238. This case is only at the pleading stage. Power Construction could be found to be wholly responsible for plaintiff's injury while Reflection Window could be found to be without fault. If that were the case, there would be no basis for preventing Reflection Window from recovering its workers' compensation payments as the Act intends. In fact, such an outcome would be antagonistic to the Act's lien provision in that it would require Reflection Window to pay compensation when it was blameless and at the same time it would give plaintiff the windfall of both a judgment against Power Construction and the workers' compensation payments made by Reflection Window.

¶ 19    The existence of the lien does not mean that Power Construction cannot get contribution. The lien is not a mechanism to apportion fault between Power Construction and Reflection Window. The right of contribution exists only in favor of a tortfeasor who has paid more than his *pro rata* share of the common liability, and his total recovery is limited to the amount paid by him in excess of his *pro rata* share. 740 ILCS 100/2(b) (West 2016); *Claudy v. Commonwealth Edison Co.*, 169 Ill. 2d 39, 42 (1995). Depending how the case develops, Reflection Window could be entitled to some or all of the damage award entered in favor of plaintiff and against Power Construction for Power Construction's own *pro rata* share of liability as recompense for its workers' compensation expenditure. If Power Construction is found to be liable, Reflection Window will have a lien in the amount awarded to plaintiff from Power Construction up to the amount of its workers' compensation payment. *Smith v. Louis Joliet Shoppingtown L.P.*, 377 Ill. App. 3d 5, 7 (2007). The *Kotecki* waiver by Reflection Window only means that it cannot limit its liability should it be found to be liable itself. But just because there is a waiver of the *Kotecki* cap defense, it does not follow that there must have been a waiver of the workers' compensation lien.

¶ 20    The second possible basis for the trial court's ruling, and the one that Power Construction advances on appeal, is that the language of the subcontractor agreement itself constitutes a waiver of the workers' compensation lien. Although not addressed anywhere else in its nine-page order, the trial court did state that "[t]he agreement at issue in this case between a subcontractor and a sub-subcontractor-employer explicitly waived the latter's workers' compensation lien." We find that there is nothing in the agreement between Reflection Window and its subcontractor to demonstrate that Reflection Window waived its lien.

¶ 21    Waiver results from the intentional relinquishment of a known right. *Crum & Forster*

*Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 396 (1993). "[T]he waiver of a workers' compensation lien must be explicitly stated." *Gallagher*, 226 Ill. 2d at 238. Because of how crucial the workers' compensation lien is to the whole system of workers' compensation, the lien "will not be considered waived absent unmistakable settlement language to that effect." *Id.* at 239. A specific reference to the lien in a waiver provision is required before the lien can be deemed waived. *Id.*; see also *Burgess v. Brooks*, 376 Ill. App. 3d 842, 846 (2007).

¶ 22    In this case, the indemnification provision lacks any specific reference to the lien or an unmistakable reference to any intention that the lien be waived. Power Construction argues that there is an express waiver because the indemnification provision "mentions both the workers' compensation statute and the rights Reflection Window enjoys under that statute." Power Construction points to the portion of the indemnification provision in which Reflection Window "agrees that its [indemnification] obligations shall not be in anyway diminished by any statutory or constitutional immunity it enjoyed from suits by its employees or from limitations of liability or recovery under worker's compensation laws." But the existence of the workers' compensation lien does not diminish any obligation Reflection Window has, nor is it a limitation on ultimate liability. The indemnification provision at issue cannot be read to express Reflection Window intentionally relinquishing its lien rights, as the lien is not mentioned and there is no reference to any waiver of the right.

¶ 23    Power Construction's significant reliance on the fact that the subcontractor agreement "mentions the Workers' Compensation Act" is misplaced. Our supreme court has held that more explicitness is required. Even general language purporting to release or waive a workers' compensation lien is not enough. *Gallagher*, 226 Ill. 2d at 238. The indemnification provision does

not mention the lien, nor does it mention any intention to waive it, far short of an unmistakable waiver.

¶ 24     Power Construction also argues that Reflection Window waived its workers' compensation lien because it agreed not to use the Workers' Compensation Act to shield itself from liabilities. The *Kotecki* cap is a limitation on liability—the workers' compensation lien is not. Power Construction argues that "a workers' compensation lien is both a statutory right to reimbursement and also a statutory limitation of liability." The former assertion is accurate, but the latter is not. A workers' compensation lien is intended to reimburse the employer for the compensation benefits paid to the employee. *Gonzalez v. Evanston Fuel & Material Co.*, 265 Ill. App. 3d 520, 522-23 (1994). A workers' compensation lien itself is not a limitation on liability; that is why the *Kotecki* decision was necessary. If the lien itself limited an employer's liability to the lien amount, we would not have needed the ruling in *Kotecki* to effectuate limited liability. See *Kotecki*, 146 Ill. 2d at 165-66. There is no basis for finding that Reflection Window waived its workers' compensation lien. Should plaintiff recover from Power Construction, Reflection Window is entitled to enforce its lien rights for an amount up to what it has already paid to plaintiff in workers' compensation benefits.

¶ 25                                          CONCLUSION

¶ 26     Accordingly, we affirm in part and reverse in part. The case is remanded for further proceedings.

¶ 27     Affirmed in part and reversed in part.

¶ 28     Remanded.